JOHN W. DONOGHUE *vs.* PRYNNWOOD CORPORATION.

Hampden. January 7, 1970. — February 3, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Real Property*, Restriction. *Equity Jurisdiction*, Restriction.

In a suit in equity by the buyer of a houselot in a large development near a country club for declaratory relief concerning a restriction imposed on each of the lots by the common grantor requiring approval by the grantor of the plans for the proposed house thereon, warranted findings by the trial judge did not show the existence of any common scheme for architectural uniformity in the development; the restriction was enforceable only by the grantor and after a decision reached objectively, honestly, and reasonably. [706–707]

In a suit in equity by the owner of a lot in a large development, who built a costly "one-story, modern-style, square-shaped, flat-roofed" house on his lot without securing approval of the plans of the house by the defendant, the grantor in the deed of the lot to the plaintiff, as required by a restriction imposed by the defendant on the lot, war-

ranted findings by the trial judge, including findings that two houses in the development other than the plaintiff's might be "classified as modern," that his house would not "be detrimental to the neighborhood," and that the defendant, although he disliked "the flat-roof design," would have approved the plaintiff's plans except for the objections of neighbors, and an absence of a showing of any conduct of the plaintiff which would deprive him of the benefit of equitable considerations, made proper inclusion in the final decree of declarations that the defendant's refusal to approve the plaintiff's plans was unreasonable, that the defendant's approval no longer was required, and that the defendant was not entitled to injunctive relief requiring removal of the house on the lot, as prayed for in the answer. [707–708]

BILL IN EQUITY filed in the Probate Court for the county of Hampden on December 30, 1965.

The suit was heard by *Smith,* J.

*James L. Allen* for the petitioner.

*Robert E. Kubicek* for the respondent.

CUTTER, J.   Dr. Donoghue sought on December 30, 1965,[1] in the Probate Court declaratory relief concerning a restrictive provision in a deed to him from Prynnwood Corporation (Prynnwood) of land (the locus) on which he has built a house.   Prynnwood by its answer, amended on January 12, 1967 (see fn. 4, *infra*), prays that the final decree shall (1) declare the restriction enforceable, (2) permanently enjoin any construction without Prynnwood's approval, and (3) require removal of Dr. Donoghue's structure from the locus.   The probate judge made somewhat incomplete findings and reserved and reported the case (G. L. c. 215, § 13) without decision.   The evidence is reported.   The facts are stated upon the basis of the judge's findings and a stipulation.

Prynnwood owned land (including the locus) near a country club (the club) in Longmeadow.   Development started in 1945.   Thirty-seven large lots were laid out in the original plans.   In 1959, eight lots were added to the de-

---

[1] The record and docket originally filed with us were confused concerning the date of filing of one or more papers.   It is the duty of the register or clerk to check the accuracy of the record and copies of the docket by careful proof reading.   See G. L. c. 231, § 135, as amended through St. 1960, c. 171; S. J. C. Rule 1:09, 351 Mass. 736.

velopment. All the lots have been sold. Houses have been
built upon all but three lots. Prynnwood still owns some
adjacent vacant land.

The deeds from Prynnwood included varying restrictions.
Each deed "contained the restriction that finished plans of
any proposed house had to be approved by" Prynnwood.[2]
In most other deeds, but not in the deed to Dr. Donoghue,
there appeared a provision that Prynnwood "reserves the
right to amend these restrictions from time to time and
. . . the right to waive compliance with these restrictions
in any instance."

The probate judge found that about May 2, 1965, Dr.
Donoghue gave "Richard A. McCullough, a real estate
agent, a deposit of . . . [$500] toward the purchase" of
the locus. McCullough told Dr. Donoghue "that the deed
would contain a restriction . . . that his plans would have
to be approved by . . . [Prynnwood], and that since this
lot adjoined the . . . [c]lub land, . . . [Prynnwood] pre-
ferred a one-story house on . . . [the locus] so that . . .
[other] houses . . . which were two-story, would have an
unimpaired view of the [c]lub."

McCullough took the deposit to Edwin S. Munson, sole
stockholder and principal officer of Prynnwood and in "com-
plete control" of its affairs. Munson was experienced in
real estate matters. Dr. Donoghue had given to McCullough
and McCullough gave to Munson "a rough penciled sketch
of the proposed house and McCullough testified[3] that he
showed it to . . . Munson, but . . . Munson had no recol-
lection of this incident." McCullough was paid a com-
mission on the sale. The deed was executed on May 3,
1965, the balance of the purchase price was paid, and the
deed was recorded.

---

[2] The restrictions in the deed of the locus read: "Subject, however, to the
restriction that . . . [Prynnwood] must approve all finished plans of [the]
buyer's proposed home, and no professional offices shall be maintained on
the" locus.

[3] The probate judge, instead of reciting the testimony, should have made
a finding. From the reported evidence, however, we ourselves could draw
the inference that McCullough did in fact show the sketch to Munson.

Dr. Donoghue employed "Elroy Weber, an architect who has won many awards for design . . . to draw plans and prepare a model of the house to be built . . . . The projected . . . cost . . . [was] at least . . . ($130,000.) . . . and the plans in substance are for a one-story, modern-style, square-shaped, flat-roofed" house.

Munson declined to approve the plans and model primarily because he objected to the flat roof. He admitted that, "while he did not like the plans, he would . . . approve them except that some of the neighbors," friends of his, "vehemently objected to the proposed structure and he was considerate of their attitude." The judge found that "Munson's refusal to approve the plans is based in part on his personal dislike of the flat-roof design, but that he would approve . . . if the . . . neighbors withdrew their objections."

There is no uniformity of style in the houses erected in this development area. All but that on the locus are "of traditional or conventional styles, with the exception of two, which might be classified as modern." The "proposed house will not depreciate the value of any other house in the development, nor will it be detrimental to the neighborhood." When the case was heard, "there was no appreciable construction on the . . . [locus] except that a foundation had been dug and a builder's shack" had been built.[4] At the date of the report, the house had "been substantially fully erected and landscaped."

1. In the circumstances, the judge's findings, justified by the evidence, do not show the existence of any common scheme (cf. *Snow* v. *Van Dam*, 291 Mass. 477, 481–487; *Butler* v. *Haley Greystone Corp.* 352 Mass. 252, 255–257), with respect to the restrictive covenant. The same considerations are here present which led this court in *Patrone* v. *Falcone*, 345 Mass. 659, 661–663, to treat a somewhat com-

---

[4] It was stipulated, however, that before January 9, 1967, when Prynnwood first moved to amend its answer to request a permanent injunction against construction, Dr. Donoghue had expended at least $34,256.07. A preliminary injunction against further construction by Dr. Donoghue had been denied to Prynnwood on June 30, 1966.

parable provision in a deed (for approval of plans) as enforceable only by the grantor.[5]

2. We do not interpret the restriction as imposing no objective standard whatsoever upon Prynnwood's action in giving or withholding approval of its grantee's plans or as making Prynnwood's whim and its officers' aesthetic taste binding upon Dr. Donoghue in framing plans.[6] Restrictions of this type will be strictly interpreted in favor of limiting the restraint on use of the granted premises. See *American Unitarian Assn.* v. *Minot,* 185 Mass. 589, 595; *Hemenway* v. *Bartevian,* 321 Mass. 226, 229. See also *Ward* v. *Prudential Ins. Co.* 299 Mass. 559, 565.

Our cases indicate that such a restriction may be enforced if the power to do so is exercised reasonably. See *Parsons* v. *Duryea,* 261 Mass. 314, 315–317 (which dealt with a restrictive provision containing somewhat more definite standards). We think, however, that (at least in the absence of explicit language to the contrary or the specification of standards of judgment), a restriction of this type should be interpreted as requiring (cf. *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 565) that the person whose approval is required shall decide objectively, honestly, and reasonably.

3. The trial judge's findings go far to show Munson's conduct to have been arbitrary. We give weight to the findings (a) that two other houses in the development may be "classified as modern"; (b) that the "proposed house will not . . . be detrimental to the neighborhood"; and (c) that Munson would have approved the plans except for the objections of neighbors (whose houses, so the judge found, were not depreciated in value). We note also the stipulation that Munson had not enforced similar covenants

---

[5] As in the *Patrone* case, at pp. 662–663, we need not consider the provision in some of the deeds of lots in the development permitting Prynnwood to release the restrictions.

[6] See *Hannula* v. *Hacienda Homes, Inc.* 34 Cal. 2d 442, 445; *Winslette* v. *Keeler,* 220 Ga. 100, 101–102; *Jones* v. *Northwest Real Estate Co.* 149 Md. 271, 277–278; *Harmon* v. *Burow,* 263 Pa. 188, 190. See also *Engvalson* v. *Webster,* 74 So. 2d 113, 114 (Fla.).

against others. In any event, this, we conclude, is not a case for granting mandatory equitable relief to Prynnwood. We reach this conclusion without reliance (as estopping Prynnwood to seek relief) upon any failure on Munson's part (see fn. 5) to object to the sketch of the house prior to giving the deed.

Obviously, the harm to Dr. Donoghue, if now forced to remove his costly house, would very greatly exceed any possible damage to Prynnwood, for whose benefit alone the requirement of approval is enforceable. He unwisely took certain risks in proceeding to build before obtaining Prynnwood's approval or judicial relief. His conduct, however, in the circumstances may be excusable because of Prynnwood's unreasonable refusal to approve. See fn. 4 concerning the denial of preliminary injunctive relief. In any event, his conduct does not require us to deny him the benefit of equitable considerations affecting relief, which are somewhat comparable to those recently applied by us in denying mandatory relief in *Marblehead* v. *Deery, ante,* 532, 537–538. There is no basis for awarding Prynnwood monetary relief.

4. A final decree, consistent with this opinion, is to be entered in the Probate Court declaring that Prynnwood unreasonably refused to approve the plans of Dr. Donoghue's house, that such approval no longer may be required, and that Prynnwood is not to be given either injunctive relief or damages.

*So ordered.*