# PEPPERTREE HILL LANDOWNER'S ASSOCIATION, INC., Plaintiff

## v.

## JEROME CIPRIANI, Defendant

Civil No. 201/89

Territorial Court of the Virgin Islands

Div. of St. Croix

May 3, 1989

GERALD T. GRONER, ESQ., St. Croix, V.I., *for plaintiff*

IRWIN J. SILVERLIGHT, ESQ. (NICHOLS, NEWMAN & SILVERLIGHT, St. Croix, V.I., *for defendant*

ELTMAN, *Judge*

## MEMORANDUM OPINION

At issue in this case is whether a homeowner's association acted reasonably and in good faith in declining to approve the use of a certain roofing material for a house under construction by a member homeowner, and whether the owner should be ordered to remove the roof which was constructed contrary to the directive of the association. The plaintiff prevails on both issues.

## FACTS

The plaintiff, Peppertree Hill Landowner's Association, Inc. ("Peppertree"), is the successor in interest of Estate Montpellier Homes, Inc., the developer of the Mary's Fancy subdivision of Peppertree Hill on St. Croix. The defendant, Jerome Cipriani ("Cipriani"), owns property in the subdivision, 140 Mary's Fancy, on which he is constructing a home. The defendant's property is subject to a number of restrictive covenants contained in a 1968 Declaration of Protective Building Restrictions affecting all of the plots in the subdivision. Paragraph 3 of the declaration provides:

> *Prior Approval of Dwelling and Site Use Plans.* All plans must first be submitted to Developer for approval, which will not be unreasonably withheld; however, Developer's opinion of aesthetic harmoney (sic) or appearance shall be a valid reason for such approval or disapproval. The approval of plans herein required shall apply to the overall use of the site as well as all structures, laundry and service areas, recreational areas, tall plantings, fences and windbreaks, plans for which shall be submitted prior to actual construction in order to protect each homeowner from inconvenience, unsightliness or obstruction of view. Developer reserves the sole right to approve or disapprove all such plans and the installations called for thereon, subject only to the exercise of good faith in making such decisions. No structures of any type nor tall plantings shall be placed upon the premises without such plans showing the location thereof being first submitted to Developer and approved in writing. Plans for modifications, variations and subsequent additions shall likewise be first submitted for approval in writing before any construction begins.

Cipriani undertook to build a house on his property and, as required by the declaration, submitted his plans to the Peppertree Building Committee. The plans, which specified that the roof would be covered with Hypalon or its equivalent, were approved. However, thereafter, Cipriani decided to use asphalt shingles for his roof, a modification from the original plans. In late February, he was alerted by Peppertree representatives that the shingles, which at that point were at the construction site but not yet applied, were not approved. Barbara Badger, the president of Peppertree, asked Cipriani to contact the Building Committee about the proposed modification, but Cipriani refused and said, in effect, that he would do what he pleased with his property. Cipriani then began to install the shingles. Mike Brady, the head of the Building Committee, also contacted the defendant but he too had no success in stopping the work until the substitute material could be considered. In the face of the defiance by Cipriani of the restrictive covenant and the authority of the Association to enforce the covenant, Peppertree has sought injunctive relief. A preliminary injunction was entered, stopping the work with the roof partially covered with shingles, following which the Building Committee met and rendered a written decision which disapproved the use of such material.

## DISCUSSION

Cipriani does not dispute that he is subject to the restrictive covenant which requires prior approval by Peppertree of his building plans. He argues, however, that the covenant must be strictly construed against the plaintiff and that Peppertree has failed to carry its burden of showing reasonableness and good faith in its decision to disallow the use of asphalt shingles on his roof. While he now concedes that he was perhaps unwise in applying the roof covering after he was asked not to do so until the Building Committee could decide whether or not to approve the material, he contends that the balance of equities favors his being able to retain the shingles in any event.

██ ██ The type of restrictive covenant at issue will be strictly interpreted in favor of limiting the restraint. Donaghue v. Prynnwood Corp., 255 N.E.2d 326 (Mass. 1970). The refusal to approve plans must be based on a reasonable determination and in the exercise of good faith. Id.; Hannula v. Hacienda Homes, Inc., 211 P.2d 302 (Cal. 1949); Urban Farms, Inc. v. Seel, 217 A.2d 888 (N.J.

1966). In Donaghue, supra, heavily relied upon by the defendant, the plans for a proposed house in a subdivision needed to be approved by the developer. The developer rejected a flat-roof design for aesthetic reasons only, and particularly because the developer's neighbors, friends of his, objected and he was attempting to please them. The covenant was not enforced on account of the unreasonable, subjective and arbitrary rejection of the design, and the homeowner was permitted to retain his roof even though he had constructed it before obtaining court approval.

Here, the facts are quite different. The Building Committee, at least two of whose members are familiar with construction and construction materials, apparently considered rather carefully the suitability of asphalt shingles. Granted, there were some preconceived attitudes, and approval was withheld before full investigation. However, it was the defendant who created that problem by modifying the previously approved building plan without notice to Peppertree and then commencing installation of the substitute roof covering before the Building Committee had an opportunity to review the proposed modification. Once the defendant was preliminarily enjoined from installing any more shingles, the plaintiff was able to investigate, deliberate and set forth in writing the reasons for its rejection of the use of asphalt shingles.

Among the particular concerns of the Building Committee was not only the durability of the roof and whether the value of Cipriani's house, and by implication the value of other houses in the neighborhood, would be preserved, but also the safety of asphalt shingles. Because the typical Virgin Islands residence, and Cipriani's in particular, is built with a cistern which is filled from rainwater running off the roof, the Building Committee was entitled to consider whether a proposed material presents an actual or potential health hazard. It is at least conceivable that Peppertree could be exposed to liability either to the defendant or to a subsequent purchaser of his home for negligently approving a roof covering which it knew or should have known was unsafe for that application and which made the cistern water toxic.

The plaintiff investigated the question of safety and learned that Owens-Corning Co., a manufacturer of such shingles, does not recommend their application in an area where rainwater is caught and saved for domestic consumption. All that means, Cipriani contends, is that Owens-Corning has not had the benefit of studies on the health hazards of asphalt shingles used for such purpose.

But the testimony of Dr. Michael Glenn Holthouser, the Director of Corporate Medical Services for Owens-Corning, submitted by the defendant in deposition form, is powerful support for the decision of the Building Committee to reject the use of asphalt shingles on Cipriani's home. According to Dr. Holthouser, the reason why his company does not know whether asphalt shingles pose a danger in this application is because they are not intended for such use. They are designed to repel water, not to collect it. He testified further that asphalt, being a petroleum product, contains polycyclic aromatic hydrocarbons, some of which are "associated with cancer, as cancer promoters." Finally, Dr. Holthouser also noted that Owens-Corning has received "inquiries" from customers who have used asphalt shingles for water collection and who have found their cistern water to be discolored.

Harlan Hutchins, a member of the Building Committee and an expert in construction maintenance and repair, was critical of the use of asphalt shingles in the Virgin Islands. According to him, asphalt, fiberglass and sand particles tend to come off the shingles and find their way into the cistern, fouling the water system. There are aesthetic problems connected with the use of such shingles because the colors are particularly prone to bleaching and, when shingles need to be replaced, a patchwork effect results from shingles of varying shades of the same color. Asphalt shingles are not as durable as other types of roofing materials and are more apt to blow off in a high wind. In addition, the tropical heat cracks and dries them out. On the basis of the foregoing, the Building Committee reasonably found that asphalt shingles are not the equivalent of the Hypalon roof covering specified in the defendant's building plans, nor are they the equivalent of Anvil or acrylic-coated galvanized which also has been approved for use on homes in the subdivision.

■■ Cipriani also argues, in effect, that Peppertree is estopped from proceeding against him because there are other nonconforming roofs within the subdivision. But the facts do not support that theory. Of the few residences cited by him, most are old or at least were erected before the Building Committee was constituted several years ago. One recently constructed house, belonging to Pastor Swedberg, has asphalt shingles, but the plaintiff has not ignored that apparent violation and is considering what action to take. Similarly unpersuasive is the defense that the plaintiff's judgment on asphalt shingles is unreasonable because at least two

condominiums and several houses on St. Croix use them. The issue is not who else uses this material but whether Peppertree had a rational, good faith basis for rejecting their use within the area under its control. That others use a roof coating which is unsuitable and possibly hazardous is hardly a basis to reverse the judgment reached by the plaintiff on the basis of its own honest evaluation. In sum, the record overwhelmingly establishes that the plaintiff acted properly and fairly in withholding its approval of the use of asphalt shingles on the roof of Cipriani's house.

What remains to be decided is whether the defendant should be required to remove the roofing material which he installed without either prior or subsequent approval by the Building Committee. Cipriani's position, which of course is that he should be allowed to keep the roof on, rests heavily on the assumption that the Building Committee's decision was arbitrary and without basis. Since it was not, Cipriani must establish some compelling reason for the denial of the mandatory injunction sought by Peppertree.

There undoubtedly are circumstances in which injunctive relief might be denied even where the plaintiff has prevailed on the merits. For example, a landowner might have been misled, or might have fairly misunderstood the restriction, or might have otherwise acted innocently although in violation of a covenant. Here, however, Cipriani installed shingles on his roof in deliberate, flagrant disregard not only of the restrictive covenant but also of the demands of Peppertree that he not do so. Although he bought his property with full knowledge of the requirement of prior approval of building plans, and he at first conformed to the covenant, in the end he simply took the position that as owner of the property he could do what he wanted with it. He undertook the installation of the asphalt shingles at his peril, and he will bear the predictable consequences of his act, unfortunate and costly for him though they may be.

██ The injunction sought by the plaintiff will be granted, and the defendant shall remove the asphalt shingles which he has installed on the roof of the house at 140 Mary's Fancy. The defendant shall further obtain prior approval from the plaintiff for any substitute material proposed to be used on the roof of such structure.

## INJUNCTION

In accordance with the memorandum opinion of even date, it is hereby

ORDERED that the defendant shall remove any and all asphalt shingles heretofore installed on the roof of the house at 140 Mary's Fancy; and it is further

ORDERED that the defendant shall receive prior approval from the plaintiff for any substitute material proposed to be used on the roof of such structure.