IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

FILED

December 29, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| INDIAN HILLS CLUB HOMEOWNER'S ASSN., INC., | ) |
| | ) |
| Plaintiff/Appellee, | ) Sumner Chancery No. 94C-179 |
| | ) |
| VS. | ) Appeal No. 01A01-9507-CH-00319 |
| | ) |
| CLAYTON L. AND CINDY COOPER, | ) |
| | ) |
| Defendants/Appellants. | ) |

APPEAL FROM THE CHANCERY COURT OF SUMNER COUNTY
AT GALLATIN, TENNESSEE
THE HONORABLE CHARLES HILL BEATY, SPECIAL JUDGE

JAMES R. TOMKINS
ROBERT H. JENNINGS, JR.
JENNINGS AND TOMKINS
Nashville, Tennessee
Attorneys for Defendants/Appellants

GERALD C. WIGGER
ORTALE, KELLEY, HERBERT & CRAWFORD
Nashville, Tennessee
Attorney for Plaintiff/Appellee

REVERSED AND REMANDED

ALAN E. HIGHERS, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

WILLIAM H. WILLIAMS, SR. J.

Indian Hills Club Homeowners' Association ("Plaintiff"), filed suit against Clayton and

Cindy Cooper ("Defendants"), seeking an injunction prohibiting Defendants from building a driveway extension/parking pad and walkway onto their property. The trial court granted Plaintiff a permanent injunction, holding that the proposed construction would violate certain restrictions of record that prohibited any construction or improvements without approval from the Board of Directors of the Indian Hills Homeowners' Association. Defendants have raised three issues for our consideration: (1) whether the Plaintiff's denial of Defendants' application and approval rested upon a lawful and legitimate basis; (2) whether the Board's decision to deny the application was an arbitrary and capricious exercise of control; and (3) whether it would be unfair and inequitable to enforce the restrictive covenant. For the reasons stated herein, we reverse the decision of the trial court and order that the injunction be dissolved.

Defendants own a home located in Indian Hills Club Subdivision. The subdivision is subject to various restrictions and covenants set forth in the "Declarations of Covenants, Conditions, and Restrictions" on record at the Register's Office for Sumner County, Tennessee. Article V, Section One of the Declarations requires that plans for proposed construction or improvement be submitted in writing and approved by either the Board of Directors or by a Board-appointed architectural committee. The Declarations also establish standards for approval of proposed construction. Article V, Section 3 of the Declarations provides in part:

> C. For the purpose of assuring the maintenance of the Lots as a neighborhood of high standards, the Declarant hereby adopts the following standards for architectural control: The Committee shall have the right to disapprove any plans submitted hereunder because of failure to ... include any information required herein, objection to exterior design, or such other matter which would render the proposed structure or use thereof inharmonious with the structures located upon other lots within the neighborhood.

Prior to 1992, individuals from Phillips Builders comprised the architectural review committee for Indian Hills Subdivision. In April 1992, the Board met and decided that the Board of Directors of the Homeowners' Association would take control of the committee.

In October 1993, Defendants submitted a request for architectural approval to the

Board of Directors of the Homeowners' Association for construction of a driveway extension/parking pad and a walkway.  Mr. Cooper described the proposed additions as follows:

> The proposal is to add a driveway parking extension onto the existing driveway.  I call it an apron, some people call it a pad, but it's an extra area for parking which veers off the existing driveway, and from the point of the rear of that additional parking area, a sidewalk from that point around to the stairs of the rear deck.

Mr. Cooper testified that he wanted to add onto the driveway because parking was inadequate in the neighborhood.

The Board denied Defendants' request and sent Defendants a letter, which stated:

> Please be advised that the Board of Directors of Indian Hills Club are now serving in the capacity of the Architectural Committee.
>
> At their last meeting, it was their decision to deny approval for your request until professional assistance can be obtained from the Architectural Committee.  Once this assistance has been obtained and standards have been set, you may at that point be eligible to resubmit your application; however, at this time the application that your [sic] have submitted has been denied.

In May 1994, despite the Board's rejection, the Defendants began construction.  Plaintiff filed suit to enjoin the construction.  Following a hearing on the matter, the trial court permanently enjoined the Defendants from building a driveway extension/parking pad or walkway because it found that Plaintiff proved by a preponderance of the evidence that the proposed construction was inharmonious with the surrounding neighborhood.

At trial, the evidence showed that there existed 14 driveway pads and walkways in the neighborhood that were similar to the Defendants' proposed driveway.  In addition, the Defendants adduced evidence of many other driveways in the neighborhood situated close to boundary lines, leaving very little green space.  Robert Payne, an experienced real estate businessman, testified that the proposed improvements would not diminish the value of any property in the neighborhood.  Several additional witnesses testified that the construction would not result in Defendants' lot being inconsistent or inharmonious with the rest of the subdivision.

The Plaintiff countered this evidence with the testimony of an architect, N. Mitchell Barnett, who opined that the proposed improvement would be inharmonious with the character of the subdivision, "that character being more green space, less concrete in the fronts of yards." Barnett also testified that 10 of the 14 driveway extensions that the Defendants alleged were similar to their proposal were situated on lots that are "physically and materially different" in shape from the Coopers' lot.

As of November 1994, the Board had not yet established standards by which to exercise architectural control.

In examining the case before us, we are confronted with several competing principles of law. First, the general rule is that an injunction should not be granted except in extreme cases where courts of law are unable to afford adequate redress. Smith v. Rodgers, 677 S.W.2d 1, 3 (Tenn. App. 1984). Furthermore, although restrictive covenants on real property are to be recognized and enforced according to their terms, such restrictions are to be strictly construed with all doubts resolved in favor of the free use of property. Parks v. Richardson, 567 S.W.2d 465 (Tenn. App.1977); Land Developers v. Maxwell, 537 S.W.2d 901 (Tenn. 1976). As the court stated in Emory v. Sweat, 9 Tenn. App. 167 (1927):

> Restrictive covenants are in derogation of the right of unrestricted use of property, and are to be strictly construed against the party seeking to enforce them. They will not be enforced by implication, and will include anything not plainly prohibited...The burden rests upon the person relying on such covenants to bring himself within its terms. (citations omitted).

Id. at 176.

Conversely, restrictive covenants that condition the right of a lot owner to make improvements upon the approval of an association of homeowners are generally valid and enforceable. See, Association of Regency Park Condominiums v. Thomasson, 878 S.W.2d 560 (Tenn. App. 1994). This principle of validity holds true especially where the covenants themselves regulate the extent of authority to approve by imposing standards

4

upon which disapproval may be based. Hollingsworth v. Szczesiak, 84 A.2d 816 (Del. Ch. 1951); Winslette v. Keeler, 137 S.E.2d 288 (Ga. 1964).

It does not appear that Tennessee courts have as yet had occasion to evaluate the standard by which a committee's power of approval over construction in a residential subdivision should be reviewed. In 1994, this Court addressed the situation with respect to condominium owners. Both parties rely heavily on Association of Owners of Regency Park Condominiums v. Thomasson, 878 S.W.2d 560 (Tenn. App. 1994), where the defendant was a resident of a condominium unit who sought to build a deck and stairs onto his unit. Id. at 561. The board of directors of the condominium complex had the authority to approve any proposed construction pursuant to covenants contained in the master deed. Id. The board rejected the defendant's request for construction and the trial court permanently enjoined defendant from building the deck and stairs. Id. at 562. On appeal, the Court of Appeals for the Middle Section discussed cases from several jurisdictions reviewing the standards that other state and federal courts employ when determining whether to uphold a board's denial of consent for proposed construction on a condominium unit. Id. at 563-66. Ultimately, the Court held that the board's decision to deny consent to the construction was not arbitrary, capricious, or unreasonable, and, therefore, such decision would be enforced. Id. at 566. The Court was careful to note, however, that because condominium owners live in close proximity to each other, "'each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property.'" Id. at 563. Consequently, we do not find Thomasson to be dispositive of the present case, which involves separate, privately owned property.

There are essentially three views among the jurisdictions with respect to restrictive covenants that require approval of construction. The majority view is that the restriction will be enforced as long as the individual or entity exercises authority reasonably and in

5

good faith.[1]  Another position taken by several courts is that a discretionary approval covenant prohibits the approving authority from imposing limitations that are more restrictive than the specific restrictions on the lot owner's use of the property.  See, e.g., Hollyhock Farms, Inc. v. Schoenlaub, 167 N.E.2d 128 (Ohio Ct. C.P. 1959); Lake Forest, Inc. v. Drury, 352 So. 2d 305 (La. App. 1977).  Finally, at least one court has held that covenants requiring prior consent before construction are valid to the extent that they furnish adequate notice to the property owner of the specific restriction sought to be enforced.  Davis v. Huey,  620 S.W.2d 561 (Tex. 1981).

We elect to adhere to the better-reasoned position of the majority of jurisdictions that have addressed the issue and hold that the approving authority must exercise its power both reasonably and in good faith.  In Davis, the Supreme Court of Texas succinctly stated the rule as follows:

> The majority view with respect to covenants requiring submission of plans and consent prior to construction is that such clauses, even if vesting the approving authority with broad discretionary powers, are valid and enforceable so long as the authority to consent is exercise reasonably and in good faith.

Id. at 566.

Whether the exercise of approval of construction plans is reasonable is a factual question to be determined in light of the circumstances.  Trieweiller, 838 P.2d at 385.  See also, LaVielle, 412 S.W. 2d at 593; Snowmass American Corp. v. Schoenheit, 524 P.2d 645, 648 (Colo. Ct. App. 1974).  There are several criteria that courts have established to employ when evaluating the reasonableness of the exercise of power to consent.  The most important of these criteria, which indicate that disapproval of plans is reasonable, are lack of compliance with the specific restrictions of the subdivision and construction that is not consistent or harmonious with the overall plan of development or with neighboring

---

[1]Rhue v. Cheyenne Homes, Inc., 449 P.2d 361 (Colo. 1969); Levin v. Mountain Farms, Inc., 158 A.2d 493 (Conn. 1959); Shields v. Welshire Dev. Co., 144 A.2d 759 (Del. Ch.1958); Engvalson v. Webster, 74 So. 2d 113 (Fla. 1954); Otwell v. West, 137 S.E.2d 291 (Ga. 1964); McNamee v. Bishop Trust Co. Ltd., 616 P.2d 205 (Haw. 1980); LaVielle v. Seay, 412 S.W.2d 587 (Ky. App. 1967);  Jones v. Northwest Real Estate Co., 149 Md. 271, 131 A. 446 (Md. Ct. App. 1925);  Donoghue v. Prynnwood Corp., 255 N.E.2d 326 (Mass. 1970); West Bloomfield Co. v. Haddock, 40 N.W.2d 738 (Mich. 1950); LeBlanc v. Webster, 483 S.W.2d 647 (Mo. App. 1972); Trieweiler v. Spicher, 838 P.2d 382 (Mont. 1992);  Friedberg v. Riverpoint Bldg. Committee, 239 S.E.2d 106 (Va. 1977).

property.  LeBlanc v. Webster, 483 S.W.2d 647; LaVielle v. Seay, 412 S.W.2d 587; *Validity, Construction and Effect of Restrictive Covenant Requiring Consent of Third Person to Construction on Lot*, 19 A.L.R. 2d 1274, at p. 1294.

On the other hand, courts have held that when deviations were allowed in the past, the consenting authority acted unreasonably in withholding consent. Boiling Springs Lakes Division of Reeves Telecom Corp. v. Coastal Services Corp., 218 S.E.2d 476 (N.C. Ct. App. 1975); LeBlanc, 483 S.W.2d at 652; Donoghue, 255 N.E.2d 326.

For example, in LeBlanc, 483 S.W.2d 647, the defendants sought approval of construction plans providing for a driveway on the north side of their house. Id. at 651. The plaintiffs, who were the developers of the subdivision, had the right to approve or disapprove any plans pursuant to recorded restrictions. Id. at 648. The plaintiffs did not approve defendants' proposal, reasoning that the driveway would be unsightly and would devalue other lots. Id. at 652. The Missouri Court of Appeals held that the plaintiff's refusal to consent was unreasonably exercised because there was no evidence of diminution of property value, no violation of basic restrictions, and the proposed construction was common in the area. Id. at 652.

Similarly, in Donoghue, 255 N.E.2d 326, the Supreme Court of Massachusetts held that the corporate officer's disapproval of the homeowner's proposed construction was unreasonable because similar covenants against other homeowners had not been enforced. See accord, Boiling Springs Lakes, 218 S.E.2d 476.

In applying the test of reasonableness and good faith to the case before us, we must consider the surrounding circumstances and general scheme of development that has been established up to the time that Defendants submitted their plans for approval to the Board.

7

Where, as here, the covenant imposes standards for approval, the respective rights of the parties are clearly established and provide the framework within which the board has the discretion to reject proposed construction. That discretion is limited by the express confines of the covenant. The board is "purely a creature of contract, and possesses only such authority as may be found in the written instrument creating it." Johnson v. Dick, 281 S.W.2d 171, 175 (Tex. Ct. App. 1955).

In the present case, the Board's refusal of Defendants' application was not based on reasons bearing a relation to the general plan of development of the community. Rather, the Board's reason for disapproving Defendants' application was that the Board did not have professional assistance to aid them in evaluating proposed construction. This basis for denial was not a proper basis pursuant to the standards established in the Declarations, which allows the Board to deny a request when there is an objection to exterior design or the construction would be inharmonious with the neighborhood.

The existence and extent of waiver or abandonment is another factor that should be considered in evaluating the reasonableness of the Board's actions. See, e.g., LaVielle, 412 S.W.2d at 593. Waiver can occur when a party that is attempting to enforce a subdivision restriction previously acquiesced to violations on another restricted lot. See, Waiver of Right to Enforce Restrictive Covenant by Failure to Object to Other Violations, 25 A.L.R. 5th 123. Abandonment of a restrictive covenant occurs when there is "community acquiescence" to continued violations of restrictions. Scandlyn v. McDill Columbus Corp., 895 S.W.2d 342, 349 (Tenn. App. 1994). In addition, the right to enforce a subdivision restriction may be lost by a general change in the character of the neighborhood. "Restrictions lose their force when they fail to serve any useful purpose." Elm Hill Homes, Inc. v. Jessie, 857 S.W.2d 566, 571 (Tenn. App. 1993). When there occurs a material change in the character of restricted property that renders the enforcement of restrictive covenants unfair or inequitable, courts may properly refuse to enforce them. Land Developers, Inc. v. Maxwell, 537 S.W.2d 904 (Tenn. 1976); Oliver v.

8

Marbut, 123 S.W.2d 859 (Tenn. App. 1938).

Although the architectural review committee was comprised of different individuals when 13 of the 14 driveway extensions were constructed, the Board acquiesced to the construction of those driveways. We do not find the fact that the committee was not comprised of homeowners when those deviations were permitted to be relevant.

Other pertinent circumstances include that Plaintiff produced an expert, who was hired nine months after the Board's denial of Defendants' request, who testified that the construction would be inharmonious, while Defendants produced several witnesses who testified that there already existed several lots with similar driveways and thus, the construction would be in harmony with the neighborhood. Moreover, Defendants' expert testified that there would be no devaluation of other property in the subdivision. Other notable evidence revealed at trial was that the Coopers live next door to the president of the Homeowners' Association.

The record discloses that the Board unreasonably rejected Defendants' plan without proof of diminished property value or a disturbed general plan. Here, the Defendants' plan does not violate a specific restriction of the covenants, is not in conflict with other homes in the subdivision, and does not diminish the value of the subdivision. Moreover, the Board previously acquiesced to the construction of similar driveways. In cases dealing with restrictive covenants, we strive to adopt an interpretation that will assure reasonable use of property for legitimate purposes. White v. Gulf Refining Co., 2 S.W.2d 414 (Tenn. 1928). We deem a relatively minor driveway extension designed to ensure adequate parking space and a walkway to be a reasonable and legitimate use of property.

The evidence, considered in its entirety, does not establish Plaintiff's right to injunctive relief. Plaintiff's request for discretionary costs and attorney's fees is denied. The trial court's injunction is hereby dissolved and the case is remanded with instructions

9

to enter judgment for Defendants.  Costs on appeal are taxed to Plaintiff.

                                                      _____
                                                      HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
WILLIAMS, SR. J.