2 P.3d 1276

AHWATUKEE CUSTOM ESTATES MANAGEMENT ASSOCIATION, INC., an Arizona non-profit corporation, Plaintiff–Appellant, Cross Appellee,

v.

George M. TURNER and Betty C. Turner, husband and wife, Defendants–Appellees, Cross Appellants.

Nos. 1CA–CV–98–0233, 1CA–CV–98–0528.

Court of Appeals of Arizona, Division 1, Department E.

June 6, 2000.

632

Bryan Cave LLP by Neil Vincent Wake, Sarah L. Chilton, Phoenix, Attorneys for Appellant/Cross–Appellee.

Jackson, White, Gardner, Weech & Walker, P.C. by Roger R. Foote, Patricia A. Terian, Mesa, Attorneys for Appellees/Cross–Appellants.

## O P I N I O N

FIDEL, Judge.

¶ 1 Ahwatukee Custom Estates Management Association, Inc. ("ACEMA") appeals from the denial of an injunction and attorneys' fees in this action against homeowners George and Betty Turner and from the denial of its motion for new trial. The Turners cross-appeal from the judgment that they violated various ACEMA Covenants, Conditions and Restrictions ("CC & Rs") and from the denial of attorneys' fees.

¶ 2 The Turners own lot 6796, one of nine lots within an Ahwatukee subdivision subject to a particular set of CC & Rs enforced by the ACEMA Board of Directors. The Turners bought their lot in 1992, built a house on it by 1995, and triggered this lawsuit in 1997

when, after being denied board permission to install a swimming pool, they threatened to build the pool without board approval.

¶ 3 The ACEMA board, pursuant to the CC & Rs, adopted and administers Architectural Committee Guidelines that govern "construction, plans and specifications as the Board, in its sole and absolute discretion, shall deem necessary or advisable." The board disapproved the Turners' swimming pool plan, basing its disapproval on their past failure to comply with board demands to correct certain alleged violations of the CC & Rs and Guidelines. The violations pertinent to this appeal are (1) grading and adding fill to the Turners' lot, (2) building a fence too high between lots 6796 and 6795, and (3) building a fence on top of a retaining wall between lots 6796 and 6794.

¶ 4 When the Turners notified the board in 1997 that they intended to install a pool without board approval, ACEMA filed this action to enjoin them from proceeding, and it also sought a mandatory injunction directing them to remove or correct their past violations of the CC & Rs and Guidelines. A special master heard three days of testimony, conducted an on-site visit, and found that the Turners had violated the CC & Rs in each of the three respects listed above. The special master concluded that the Turners should be enjoined from undertaking future alterations or improvements without obtaining requisite board approval, explaining that to allow owners "to continue to construct improvements on their lots without prior approval from the ACEMA board, when such approval is required by the CC & Rs, could lead to a finding that the CC & Rs have been abandoned and are no longer enforceable." The master also concluded, however, that ACEMA had suffered "no irreparable injury" from the Turners' past violations and should not receive corrective injunctive relief. Finding no "prevailing party," the master denied both parties' requests for attorneys' fees. The trial court adopted the special master's findings of fact and conclusions of law and issued a judgment in accordance with his recommendations.

¶ 5 We consider on appeal whether the trial court correctly found that the Tur-

ners had violated the CC & Rs, correctly denied ACEMA retrospective injunctive relief, and correctly denied both parties attorneys' fees. In so doing, we are guided by the following precepts: (1) CC & Rs constitute a contract between the subdivision's property owners as a whole and individual lot owners. *See Arizona Biltmore Estates Ass'n v. Tezak,* 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (1993). Contract interpretation presents questions of law, which we resolve independently of the trial court. *Id.* (2) To the extent that we are confronted with questions of fact, we are bound by the trial court's findings unless they are clearly erroneous. *See Lee Dev. Co. v. Papp,* 166 Ariz. 471, 475–76, 803 P.2d 464, 468–69 (1990).(3) Granting or denying injunctive relief rests within the sound discretion of the trial court, *Financial Associates, Inc. v. Hub Properties, Inc.,* 143 Ariz. 543, 545, 694 P.2d 831, 833 (1984), as does the grant or denial of attorneys' fees. *See* A.R.S. § 12–341.01 (1999).

## I. FILL DIRT, LOT GRADE, AND THE FS–20 PLAN

¶ 6 The CC & Rs applicable to grading provide that "no grading or cutting shall be performed nor fill added to any Lot without the approval of the Board of Directors or the Committee of ACEMA." The Architectural Committee Guidelines provide that "each lot is to remain in its natural desert state and no grading, cutting or adding of fill to any lot will be approved by the Board except in connection with actual and approved construction upon the lot."

■ ¶ 7 The special master found and the evidence supports that before the Turners built their house on lot 6796, they permitted fill to be added, had grading performed, and changed the elevation, all without obtaining ACEMA board approval. Thus, the record supports the conclusion that the Turners, by engaging in unapproved filling and grading, violated the provisions quoted above.

■ ¶ 8 The record, however, also supports the master's conclusion and the trial court's judgment that no equitable relief should be awarded to ACEMA for this violation. Some relevant circumstances are these:

(a) Before undertaking the grading, the Turners informed the ACEMA board that they intended to return their lot to the grade shown in a plan developed by Brooks, Hersey and Associates known as the "FS–20 Grading and Drainage Plan." The original developer, Presley Development Company, had hired Brooks, Hersey & Associates to develop grading and drainage plans for the subdivision. To comply with the FS–20 plan, the Turners undertook to fill in a ditch or gully adjacent to lot 6794 caused by over-excavation of that lot and to lower the existing grade adjacent to lot 6795. Both of the deviations that the Turners attempted to correct were man-made, not natural conditions.

(b) Although the ACEMA board disputed that the Turners could rely on the FS–20 plan to show the proper grade and told the Turners that the proper grade was instead the condition of the lot when the Turners purchased it, the CC & Rs and Guidelines do not clearly address whether the Turners' lot should have been graded according to the FS–20 plan or the grade at the time of purchase. *Cf. Arizona Biltmore Estates,* 177 Ariz. at 449, 868 P.2d at 1032 (ambiguities or doubts in CC & Rs should be resolved in favor of the free use and enjoyment of the property and against restrictions). Further, the board produced no evidence of a drainage plan that superseded the FS–20 plan and encompassed the grade at time of purchase. Indeed, the board could not establish the grade at time of purchase, much less establish that it reflected a systematic and appropriate deviation from the FS–20 plan and not mere happenstance.

(c) The City approved and issued permits based upon the FS–20 plan. Although ACEMA initially required the Turners to provide a floor elevation 19 inches lower than specified in the FS–20 plan, the City Engineer declined to approve that deviation, and ACEMA eventually gave conditional approval for construction at a floor elevation consistent with that specified in the FS–20 plan.

(d) ACEMA failed to prove any disruption to subdivision drainage resulting from the

filling and draining that the Turners performed. This conclusion is implicit in the master's determination that no irreparable injury or monetary damage resulted to ACEMA from the Turners' grading and filling violation.

(e) ACEMA waited until after the Turners had constructed a house and fences on the lot before seeking injunctive relief.

¶ 9 "An injunction is an equitable remedy which allows the court to structure the remedy so as to promote equity between the parties." *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 331, 909 P.2d 393, 398 (1995) (supplemental opinion); *see also Heritage Heights Home Owners Ass'n v. Esser*, 115 Ariz. 330, 333, 565 P.2d 207, 210 (1977). The enforcement of restrictive covenants through an injunction is not a matter of right, but is governed by equitable principles. *See McRae v. Lois Grunow Memorial Clinic*, 40 Ariz. 496, 505, 14 P.2d 478, 481 (1932); *Holmes Harbor Water Co., Inc. v. Page*, 8 Wash.App. 600, 508 P.2d 628, 630–31 (1973) (citing 4 Restatement of Torts § 936 (1939)). Equitable considerations include the relative hardships and injustice; the public interest; misconduct of the parties, if any; delay on the part of the plaintiff; and the adequacy of other remedies. *See McRae, id.; Holmes Harbor, id.; see also* Restatement (Third) of Property: Servitudes § 8.3 (Tentative Draft No. 7, 1998).

¶ 10 ACEMA points out that the Turners knowingly undertook their grading and filling without approval and that "[e]quitable discretion should not be used to protect an intentional wrongdoer." *Decker v. Hendricks*, 97 Ariz. 36, 41–42, 396 P.2d 609, 612 (1964). Neither, however, should a mandatory injunction issue to enforce a requirement of formal approval when approval has been arbitrarily and unreasonably withheld. *See Young v. Tortoise Island Homeowner's Association*, 511 So.2d 381, 384 (Fla.App.1987) (mandatory injunction should not issue to enforce the arbitrary or unreasonable exercise of approval authority by subdivision board); *Donoghue v. Prynnwood Corp.*, 356

Mass. 703, 255 N.E.2d 326, 329 (1970) (mandatory injunctive relief should not issue in support of arbitrary enforcement of restriction); *see also Kennedy v. Morrow*, 77 Ariz. 152, 155, 268 P.2d 326, 329 (1954) ("Equity regards the substance rather than the form."); *Arizona Coffee Shops v. Phoenix Downtown Parking*, 95 Ariz. 98, 100, 387 P.2d 801, 802 (1963) ("One who seeks equity must do equity."). In our opinion, the board acted arbitrarily and unreasonably in the grading demands that it made upon the Turners, and the trial court did not abuse its discretion by declining to retrospectively enforce those demands through the issuance of a mandatory injunction.

## II. Fencing Violations

¶ 11 The CC & Rs prohibit walls and fences, among other structures, from being "erected, placed, altered or maintained on any Lot until the construction plans and specifications and a plan showing the location of the structure or plot plan have. been approved by a majority vote of the Board of Directors of ACEMA...." Similarly the Guidelines provide, "No building, fence, wall ... shall be commenced, erected, maintained, improved, altered, made or done without the prior written approval of the Board of Directors for this purpose."

¶ 12 The special master found and the evidence supports that the Turners violated these provisions by raising the wall without board approval between their lot and lot 6795 and by building an unapproved fence on top of the retaining wall between their lot and lot 6794. The special master also found and the evidence supports that these changes were not visible from the abutting street; that they were visible only to the Turners and to the owners of lots 6794 and 6795, who approved them;[1] and that they were "a practical solution to an existing problem which, if allowed to continue to exist, will not cause irreparable injury to ACEMA and its members." The master accordingly recommended and the trial court concluded that no retrospective equitable relief should be pro-

---

1. Approval by the owners of lot 6794 was apparently withdrawn after the special master took evidence and the trial court rendered its judgment. This fact was submitted by ACEMA in its motion for new trial, a subject we take up in subsection IIC of this decision.

vided to ACEMA from the Turners' fencing violations. Here, as before, we find no abuse of the trial court's broad equitable discretion.

### A. The 6796/6795 Fence

¶ 13 The ACEMA board approved a six foot eight inch fence between lots 6795 and 6796, but subsequently notified the owners of lot 6795 that the fence exceeded the approved height. The board reached this conclusion by measuring the fence from lot 6795, the lower of the two adjacent lots. After the owners of lot 6795, who owned a pool, responded by lowering the fence, the City of Phoenix informed them that their lowered fence violated a city ordinance requiring that exterior pool fences be five feet high. *See* Phoenix City Construction Code App. Ch. 4 § 421.1.1 (1996). Measured from lot 6796, the higher lot, the fence was not five feet above grade.

¶ 14 The CC & Rs and Architectural Committee Guidelines do not specify whether fence height should be measured from the side with higher or lower adjacent elevation. The Phoenix City Zoning Code, in contrast, states that fence height shall be measured from the higher adjacent elevation. Phoenix City Zoning Code, Ch. 7, § 703.A.1.g. Measuring fence heights from the higher adjacent elevation furthers the intent of the Code, which is to restrict access to an open pool.

¶ 15 The Turners proceeded without board permission but with the approval of their neighbors to restore the 6796/6795 fence to its previous height, which restored it to compliance with the City Code.

¶ 16 ACEMA sought by mandatory injunction to require the Turners to lower the fence once again, which would have reinstated a violation of the Phoenix City Zoning Code.[2] This request was arbitrary and unreasonable under the circumstances, and the trial court properly declined to order such relief.

**2.** Alternatively, ACEMA points out, a lowered fence could be rendered compliant with the City Code by requiring the Turners to lower the grade of their property adjacent to the fence. As we have indicated in the previous section, however,

### B. The 6796/6794 Fence

¶ 17 The Turners raised the elevation of lot 6796 along the border of lot 6794 during their effort to conform to the FS–20 plan. Along that border, with the board's approval, the Turners had constructed a retaining wall and the neighbors had constructed a separate fence. Measured from the Turners' elevation, again the higher adjacent elevation, the neighboring fence was only three feet above grade. The fence was not high enough under the circumstances to meet privacy concerns. Additionally, the neighbors owned a pit bull dog that sometimes leaped the fence. The board authorized the neighbor to raise the fence on his lot by one course of block, but the neighbor declined to do so, fearing structural weakness. Although the ACEMA board had approved the Turners' construction of a retaining wall, it had also instructed the Turners not to build a fence atop the wall. To create a higher barrier between the two lots, however, the Turners eventually built a fence on the retaining wall. At the time of this construction they had the neighbor's consent, but not the board's approval.

¶ 18 The trial court declined to order the Turners to remove the 6796/6794 fence, adopting the master's conclusion that the fence was a "practical" solution, that it was not visible from the street, and that it caused ACEMA no irreparable harm.

¶ 19 If the parties' course of conduct with respect to the 6796/6794 wall were considered in isolation from the remainder of the case, ACEMA might have made a stronger case for relief from this violation than from the others. In *Continental Oil Co. v. Fennemore*, 38 Ariz. 277, 299 P. 132 (1931), our supreme court recognized that a party seeking to enforce a valid deed restriction may demonstrate adequate harm merely by proving that to tolerate a violation would diminish the protection provided to all homeowners by the deed restrictions. *See id.* at 285–86, 299 P. at 135. The record does not suggest that

we do not find that the trial court abused its discretion in denying ACEMA a mandatory injunction with respect to the grading of the property.

ACEMA made arbitrary demands with respect to the 6796/6794 wall; to order the removal of the addition that the Turners built without permission would serve to vindicate and preserve the board's future authority to enforce the subdivision's CC & Rs and Guidelines.

¶ 20 Under the totality of circumstances, however, we do not find that the trial court abused its equitable discretion by denying ACEMA relief from the 6796/6794 wall. First, we do not consider the 6796/6794 wall in isolation. It was one of a cluster of interrelated violations, all of which arose from a grading dispute in which the board took what we have characterized as an arbitrary and unreasonable position. We have quoted the proposition that "[o]ne who seeks equity must do equity." *Arizona Coffee Shops*, 95 Ariz. at 100, 387 P.2d at 802. The trial court might reasonably have concluded that ACEMA had done insufficient equity to be entitled to any mandatory retrospective relief from a related cluster of conditions that were invisible to the world at large, that had not been proven to cause any drainage problems, and that caused no other form of discernable, material harm. As for the more abstract question of upholding the board's enforcement authority, the trial court might reasonably have concluded that it provided a sufficient bolster under the circumstances by including in its judgment that, "Should Defendants decide to construct a swimming pool in their rear yard, Defendants are required to first obtain the approval of ACEMA, in accordance with the CC & R requirements."[3] We cannot say under the circumstances that the court struck an inappropriate equitable balance by limiting the board to prospective relief.

### C. Motion For New Trial

[17] ¶ 21 The matter was tried upon the evidence that the owners of lot 6794 had acceded to, and were content with, the construction of the fence above the Turners' retaining wall. In a motion for new trial, however, ACEMA submitted by way of newly discovered evidence that the 6794 owners no longer acceded to the wall, having discovered after trial that it encroached upon their property. The trial court denied the motion, concluding that ACEMA had failed to show that it could not, with reasonable diligence, have discovered the evidence before trial. *See* Rule 59(A)(4), Ariz. R. Civ. P. Although ACEMA appeals from the denial of its motion, it offers us no basis upon which to overturn that discretionary finding by the trial court. We add that the trial court acted prudently under the circumstances by leaving it to the two lot owners independently to sort out the consequences of any such encroachment. We find no abuse of discretion in the denial of ACEMA's motion for new trial.

### III. ATTORNEYS' FEES AND CONCLUSION

¶ 22 CC & R Article IX ¶ 7 provides, in part, "In the event legal action is filed hereunder, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees incurred in addition to any relief or judgment ordered by the Court." Both parties claim that they were the prevailing party in the trial court and entitled to attorneys' fees. The trial court denied the requests, finding that both parties were non-prevailing parties. We agree, and make the same finding on appeal. ACEMA has prevailed in establishing that the Turners' past conduct violated the CC & Rs and Guidelines and has vindicated its future enforcement authority, but has failed in its principal effort to achieve mandatory retrospective injunctive relief.

¶ 23 The judgment of the trial court is affirmed. The parties shall bear their own attorneys' fees and costs.

CONCURRING: SHELDON H. WEISBERG, Judge, and E.G. NOYES, JR., Judge.

---

**3.** We trust, given the foregoing discussion, that such approval will not be arbitrarily or unreasonably withheld.