IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

LARRY D. SPECTOR, AS TRUSTEE OF THE SPECTOR REVOCABLE TRUST, DATED
MAY 25, 1978,
*Plaintiff/Appellant*,

*v.*

FITNESS & SPORTS CLUBS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, FKA
FITNESS INTERNATIONAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY,
*Defendant/Appellee.*

No. 2 CA-CV 2022-0073
Filed May 8, 2023

---

Appeal from the Superior Court in Pima County
No. C20183029
The Honorable Kellie Johnson, Judge

**VACATED AND REMANDED**

---

COUNSEL

Waterfall, Economidis, Caldwell, Hanshaw & Villamana P.C., Tucson
By Corey B. Larson and Cindy K. Schmidt

and

Fleishman Law PLC, Tucson
By Michael A. Fleishman
*Counsel for Plaintiff/Appellant*

Titus Brueckner & Levine PLC, Scottsdale
By Jeffrey D. Harris

and

Klehr Harrison Harvey Branzburg LLP, Philadelphia, Pennsylvania
By A. Grant Phelan
*Counsel for Defendant/Appellee*

---

**OPINION**

Presiding Judge Brearcliffe authored the opinion of the Court, in which Judge Eckerstrom and Judge Kelly concurred.

---

B R E A R C L I F F E, Judge:

**¶1**        In this litigation arising from a commercial lease dispute, Plaintiff Larry Spector appeals from a judgment in favor of defendant Fitness & Sports Clubs LLC, formerly known as Fitness International LLC (FSC), and the trial court's denial of his motion for reconsideration. The dispositive issue in this appeal is whether the notice and opportunity-to-cure ("notice and cure") provisions of a commercial lease apply to Spector's claim for damages. Addressing Spector's arguments on the merits, even though he did not raise them with the court, we conclude the notice and cure provisions do not apply to Spector's claim. Because the court interpreted the pertinent provisions of the parties' lease otherwise, we vacate and remand.

### Factual and Procedural Background

**¶2**        "Following a bench trial, we view the facts in the light most favorable to upholding the court's ruling." *Ariz. Biltmore Hotel Villas Condos. Ass'n v. Conlon Grp. Ariz., LLC*, 249 Ariz. 326, ¶ 3 (App. 2020). In December 2006, Spector, as trustee for the Spector Revocable Trust, leased a commercial building to Bally Total Fitness Corporation. The ten-year lease required the tenant to pay "[a]ll costs, expenses and obligations" for the premises, unless otherwise stated. The tenant also was required to maintain the premises "in good condition and repair" during the lease and to "leave the Premises in broom-clean condition" when the lease ended. In

2

December 2011, Bally assigned the lease to FSC. In 2012, with Spector's knowledge and approval—and as permitted by the lease—FSC ceased operations on the premises, leaving the building vacant. FSC continued to pay rent, which Spector accepted.

¶3        In March 2015, FSC notified Spector that the HVAC units on the roof of the building had been vandalized. FSC advised Spector that, given the danger of repeat vandalism, it would not repair or replace the HVAC units. Instead, noting it would file an insurance claim, FSC informed Spector that it would retain any insurance proceeds and give them to him when the lease expired. Spector agreed.

¶4        FSC surrendered the premises to Spector on December 27, 2016, and the lease expired four days later. When it surrendered the premises, FSC delivered $40,119.59 in insurance proceeds to Spector, which he accepted. FSC also sent Spector a letter confirming the surrender of the property and the expiration of the lease. In the letter, FSC stated that "turnover of the Premises to Landlord has been performed in compliance with all provisions as stated in the Lease" and that "Landlord hereby has agreed to release the tenant," asking that Spector countersign the letter indicating his agreement. Spector did not do so. Instead, after inspecting the property, Spector wrote at the bottom of the letter: "Landlord has received possession on 12/27/16. HVAC is missing. Parking lot lights are not working. Various windows are broken. Plumbing fixtures are missing." Spector then signed the letter and returned it to FSC in January 2017.

¶5        Spector filed his complaint in June 2018, alleging FSC "materially breached the terms of the Lease by failing to adequately maintain and safeguard the Leased Premises, which resulted in extensive damages to the Leased Premises." Spector alleged that, as a result of FSC not maintaining the property, "vandals stole HVAC equipment, [and copper], broke windows, [and] damaged the Leased Premises" and that there was "overall deterioration of the condition of the Leased Premises." Spector also alleged the landscaping had not been properly maintained. Spector sought "$117,944.37 in contract damages."

¶6        FSC's answer denied the allegations and asserted as an affirmative defense that Spector's "claims are barred by the non-occurrence of conditions precedent." Later, in a disclosure statement, FSC claimed that Spector had never provided it "with written notice of any non-monetary default and an opportunity to cure," stating that such was "a prerequisite of any claim for damages" under the lease.

¶7        A two-day bench trial was set for February 2022.[1]  In the parties' joint pretrial statement, FSC stated, as a contested issue of material fact, that Spector had failed to provide it the prerequisite notice and cure period "in accordance with § 9.2 of the Lease."  Spector included, as a contested issue of law, whether "compliance with" the opportunity to cure provisions (§ 9.2 of the lease) was a prerequisite to his claim for damages for breach of lease.

¶8        During the February 2022 trial, despite having forecasted an argument that no notice and cure period was required for his claim, Spector did not make any direct argument that § 9.2 did not apply.  He argued instead, largely, that he had provided sufficient notice.  The trial court ultimately ruled for FSC, stating that "the evidence presented . . . fails to prove by a preponderance of the evidence that [FSC] breached the Lease because the evidence fails to demonstrate that [Spector] provided [FSC] with written notice of his complaints and a cure period required under the Lease."  Spector moved for reconsideration, arguing that FSC had waived the notice and cure defense by failing to properly raise it in its answer.  The court denied the motion for reconsideration, awarded FSC its attorney fees and costs and entered a final judgment under Rule 54(c), Ariz. R. Civ. P.  This appeal followed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1).

**Analysis**

¶9        Spector argues on appeal that the notice and cure provisions in § 9.2 of the lease do not apply here.  FSC counters that Spector waived this argument and, regardless, that the trial court correctly concluded that notice and an opportunity to cure under § 9.2 of the lease was "a prerequisite to Spector bringing an action against [FSC]."

¶10       Section 9.2 of the lease states

> If Tenant fails to perform any covenant or is otherwise in breach of any provision of this Lease (except for the defaults set forth in Sections 9.1 and 9.3), and such failure or breach continues for a period of thirty (30) days after Tenant receives written notice thereof from

---

[1]Before trial, the trial court granted Spector's motion for partial summary judgment, ruling that, by accepting the $40,119.59 in insurance proceeds, Spector's "breach of contract claim [was] waived only to the extent of that $40,119.59."

> Landlord specifying the nature of such failure,
> then such failure shall be deemed a default
> under this Lease . . . .

Then, in § 9.5, it states "[i]n the event of default" under the lease "and after Tenant's receipt of written notice of such default and the expiration of the applicable cure period without Tenant's cure thereof, Landlord shall have the option to exercise" a series of remedies including terminating the lease and re-entering and taking possession of the premises.

¶11        Those notice and cure provisions, Spector asserts, "relate solely to depriving Tenant of possession during the term of the Lease, not to recovery of damages *after* the end of the Lease term." He relies on § 9.9, the last section of Article 9 of the lease, which specifies that "[t]he above remedies"—those stated in §§ 9.1 to 9.8—"are in addition to all other remedies available to Landlord at law or in equity." Consequently, he argues, because his complaint only seeks money damages, not a default remedy such as lease termination and repossession, the notice and cure provision for such default remedies does not apply.

**Waiver**

¶12        As to waiver, FSC asserts that Spector cannot argue the inapplicability of § 9.2 because he did not raise it in the trial court. Spector certainly did not squarely, let alone fully, raise this argument during trial. However, he did preserve it in the parties' joint pretrial statement as a contested issue of law, and the doctrine of waiver is discretionary. *See Noriega v. Miami*, 243 Ariz. 320, ¶ 27 (App. 2017).

¶13        The arguments at trial to a great degree turned on whether § 9.2 had been complied with, not whether or not it applied in the first instance. This then led to the trial court's conclusion that Spector failed to prove a breach of the lease "*because* the evidence fail[ed] to demonstrate" that Spector had provided the notice and cure period "required" by § 9.2 of the lease. (Emphasis added.) Notwithstanding Spector's failure to argue the applicability of § 9.2 to his claims, as explained below, the court's conclusion was founded on an incorrect interpretation and application of the lease language. *See Ahwatukee Custom Ests. Mgmt. Ass'n v. Turner*, 196 Ariz. 631, ¶ 5 (App. 2000) (contract interpretation is question of law and we are not bound by trial court's factual findings if "clearly erroneous"). In our discretion, therefore, because the only evidence needed to correctly interpret the contract—the lease itself—was in the record, and because the court's misinterpretation was fundamental to its judgment, we decline to find this argument waived.

**Notice and Cure Period is Not a Condition Precedent to a Breach of Contract Claim**

¶14 "Contract interpretation is a question of law we review de novo." *Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, ¶ 10 (App. 2018). For such interpretation, we look to the plain meaning of the words within the whole of the contract. *Id.* If the language of the contract is clear on its face, we go no further. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, ¶ 9 (App. 2009).

¶15 FSC is correct that, under § 9.2, providing notice and a cure period is a condition precedent to some relief under the lease, including those remedies identified in § 9.5, such as termination of the lease and repossession. Under § 9.2, if the tenant is in breach of any lease provision and that breach continues "for a period of thirty (30) days" after the landlord provides written notice of the breach, the tenant is in "default" under the lease. That is, if, after notice, the tenant fails to timely cure his breach, he is both in breach of the lease (as to whatever lease obligation he failed to fulfill) and in default. Upon default, the landlord can then pursue default remedies, such as those in § 9.5 of terminating the lease, reentering the premises, and retaking possession. Compliance with § 9.2 is therefore a precondition to the pursuit of remedies requiring default.

¶16 Section 9.9, however, specifies that remedies for default, such as those in § 9.5, "are *in addition to* all other remedies available to Landlord at law or in equity." (Emphasis added.) Spector's complaint, while referencing "Section 9.5(a) (Remedies After Default) of the Lease," sought only monetary damages for FSC's alleged failure "to adequately maintain and safeguard" the premises. Spector did not seek a default remedy, such as termination of the lease and repossession of the premises. Undoubtedly, he did not because FSC had already surrendered the premises and the lease had expired. Nonetheless, because Spector was only seeking compensatory damages, rather than any Article 9 default remedy, his claim was merely a breach of contract claim encompassed within the additional remedies available under § 9.9 of the lease. Proof of such a breach does not depend on Spector proving that he had "provided [FSC] with written notice of his

complaints and a cure period required" by § 9.2, as the trial court concluded.[2] We therefore vacate the court's judgment.[3]

**Attorney Fees and Costs**

¶17        Because we vacate the trial court's judgment, we also vacate its attorney fees and costs award in favor of FSC below. On appeal, both Spector and FSC request attorney fees and costs pursuant to Ariz. R. Civ. App. P. 13(a)(8) and 21(a), A.R.S. § 12-341.01, and § 16.6 of the lease.

¶18        Section 16.6 of the lease provides that the prevailing party shall receive reasonable attorney fees and court costs from the losing party. FSC is not the prevailing party on appeal and is therefore not entitled to an award of fees under § 12-341.01(A) or § 16.6 of the lease. Because Spector is the prevailing party, we award Spector costs and reasonable attorney fees on appeal upon compliance with Rule 21, pursuant to § 16.6 of the lease. *See Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, ¶ 26 (App. 2001); *see also Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, ¶ 33 (App. 2007) (costs on appeal to prevailing party).

## Disposition

¶19        We vacate the trial court's judgment and remand for the court's reconsideration of the evidence presented at trial in light of this opinion, the taking of additional argument and evidence at its discretion, and entry of a new judgment.

---

[2]This opinion does not resolve whether § 9.2 applies to Spector's claim for "default interest" under § 9.8 of the lease. We leave that to the trial court to address on remand.

[3]Because we resolve the case on this issue, we need not address the other arguments raised by Spector on appeal.