Carl LeBLANC and Luretta F. LeBlanc,
Respondents,

v.

Edward J. WEBSTER and Bernita O.
Webster, Appellants.

No. 25767.

Missouri Court of Appeals,
Kansas City District.

June 5, 1972.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 6, 1972.

Application to Transfer Denied
Sept. 11, 1972.

Pickett, Andereck, Hauck & Sharp, Thomas O. Pickett, Trenton, for appellants.

Herbert S. Brown, Trenton, for respondents.

DIXON, Judge.

The trial court enjoined defendants-lot owners from constructing a house in a residential subdivision developed by plaintiffs. Plaintiffs claim their right to the injunction on the basis of a refusal by plaintiffs of approval of the defendants' plans. In refusing the approval, plaintiffs rely on a portion of the recorded restrictions, viz:

"11. All building plans for any . . . structure whatsoever . . . shall be subject to approval in writing of any architect or agent appointed from time to time by the Developers, . . .

Before the owner of any lot shall commence the construction or alteration of any . . . structure . . ., such owner shall submit to the architect or agent . . . a complete set of plans and specifications for said structure, . . . and no structure of any kind shall be erected, . . . until the . . . written approval of such architect or agent. . . .

\*   \*   \*   \*   \*   \*

Said architect shall have the right to disapprove . . . such plans and specifications . . . if, in the opinion of the architect or agent the design . . . of the proposed building or other structure is not in harmony with the general surroundings of such lot [or] with the adjacent buildings or structures, . . ."

Defendants have appealed; the designation of the parties in the trial court will be followed.

There is no dispute that the declaration of restrictions is duly recorded and that the defendants had constructive notice of them by such recording. The parties' disputes as to the date of delivery to them of a copy of such restrictions do not conclude any issue in this case. Nor do we feel that any question of laches or estoppel is presented which requires determination for the disposition of this case. For that reason, we do not note defendants' contentions and cases relating to the question of estoppel and laches. Plaintiffs concede that the plans show no violation of the restrictions, except plaintiffs claim that the proposed site plan with a driveway on the north is unsightly and out of "harmony" with the surroundings because of excess fill.

Defendants contend that restrictions upon land use are not favored and are not extended by implication. This contention flows from the basic concept that restrictions upon the use of land were not favored at the common law and are thus subject to strict construction. Wearen v. Woodson, Mo.App., 268 S.W. 648; Thompson on Real Property, 1962, Section 3161, page 116. They argue that no portion of the restrictions makes any requirement as to "fill" or "maintaining natural contour" and refusal of approval on that basis extends the restrictions by implication.

The plaintiffs assert only that the restrictions plainly require approval of plans and that such approval has been denied

and the plaintiffs are, therefore, entitled to the relief granted in the trial court.

In oral argument and in plaintiffs' briefs, the plaintiffs assert that such right of approval is unlimited by any requirement of reasonable action in refusing approval or any necessity for proof of violation of the basic restrictions. They assert that the language of the restrictions set forth above is clear and unequivocal and that, absent the prior consent, no structure may be erected on defendants' land.

The parties have cited no Missouri case that deals with this issue. The case of Lake Development Enterprises, Inc. v. Kojetinsky, Mo.App., 410 S.W.2d 361, is cited by plaintiffs as controlling on the issue of the validity of a restriction requiring such prior consent. We do not believe that case reaches the issue presented here. In Lake Development Enterprises, the issue was failure to obtain prior consent to build on a portion of a parkway where the right to build *any structure* had been denied without prior consent. That case did not turn upon a restriction requiring a prior consent for erecting a structure in "harmony with the general surroundings of the lot . . . the adjacent buildings and structures," on any portion of the land in question.

Many other jurisdictions have considered the question presented here. The cases from other jurisdictions are collected and annotated in 40 A.L.R.3d 864, supplementing 19 A.L.R.2d 1268. This annotation and the cases there reviewed disclose that those attacking the validity of restrictions requiring prior consent have contended for the doctrine of strict construction asserting that such restrictions are void and unenforceable.

It has been claimed that unless an external standard for the exercise of the right of approval is provided such a right of approval is vague, indefinite and unenforceable.[1] The courts, in considering this objection to the validity of such a requirement of prior consent, have reasoned that the uniform scheme or plan of development overcame such objection, when the requirement is reasonably exercised.

These cases also reason that in the benefit to be derived from enforcement of such an overall scheme is found justification for upholding such provisions against the claim that they are against "public policy," i. e., a void restraint on use. Not explicit but inherent in this reasoning is that in balancing the public policies invoked, the courts feel that there is enough benefit to the public through maintenance of the overall scheme to justify the interference with use which such prior consent imposes. A number of cases have dealt with the problem of enforcement of restrictions which required "prior consent" by judicially engrafting a requirement that such approval be exercised reasonably.

In Winslette v. Keeler, 220 Ga. 100, 137 S.E.2d 288 (1964), the Georgia Supreme Court sustained a provision in a restrictive covenant quite similar to that in the instant case (Id. at 289). The court said that the language allowing the grantor to reject proposed construction which was not in "conformity and harmony" with existing standards in the community was not so indefinite and vague as to be void. The grantor was thereby given a discretionary power to reject any proposal subject only to a requirement that the power be exercised reasonably and in good faith. The Georgia court noted that these kinds of provisions are necessary to protect the value and general plan of construction; and, therefore, they are not contrary to public policy, citing Rhue v. Cheyenne Homes, Inc., supra, and Hannula v. Hacienda Homes, Inc., 34 Cal.2d 442, 211 P.2d 302 (1949).

In La Vielle v. Seay, 412 S.W.2d 587, 593 (Ky.App.1966), the court said that the determination of whether the grantor's de-

---

1. Rhue v. Cheyenne Homes, Inc., 168 Colo. 6, 449 P.2d 361; Kirkley v. Seipelt, (1957), 212 Md. 127, 128 A.2d 430.

cision was arbitrary and unreasonable (an implied restriction on the grantor's power) is a factual question to be determined in the light of circumstances including whether the proposed use is consistent with the general surroundings and in harmony with the other buildings in the subdivision and whether the proposed use is in compliance with other restrictions set out in the plans.

A Massachusetts case, Donoghue v. Pyrnnwood Corporation, 356 Mass. 703, 255 N.E.2d 326, 329 (1970), listed the findings of the trial court which supported the decision that the grantor had not acted honestly, objectively, and reasonably in refusing to approve a $130,000 "one-story, modern-style, square-shaped, flat-roofed" house. First, there were two other modern-style houses in the neighborhood. Secondly, the trial court found that the proposed house would not be detrimental to the neighborhood, and, finally, that the grantor would have approved the plans but for the objections of several neighbors. A well-phrased and thorough review of these and other authorities is found in Syrian Antiochian Orth., etc. v. Palisades Associates, 110 N.J.Super. 34, 264 A.2d 257 (1970), where the court found such provision to be enforceable but required a reasonable exercise.

■ From these cases, we conclude that the majority rule which they exemplify is the better reasoned rule and requires that we accept the validity of restrictions requiring prior approval or consent to the erection of structures but that such restrictions must be reasonably exercised.[2]

■ We also conclude from the reasoning of the cases discussed that the reasonable exercise of a requirement of prior consent includes situations when there is a lack of compliance with the specific restrictions of the subdivision; second, when the proposed building is not consistent and

harmonious with the overall plan or actual construction within the subdivision or development or when the proposed building is in conflict (creating damages) with the neighboring properties. We believe that these criteria, although perhaps not the only ones that could be considered, are sound.

Concluding as we have that the restriction requiring consent is valid and enforceable if reasonably exercised, we now consider the specific facts shown in this record on that issue. In considering such facts, we note appellants' contention that where injunctive relief is granted, the right to such relief must be clear and the reason for such relief clearly established. Sapp v. Garrett, Mo.App., 284 S.W.2d 49; American Pamcor, Inc. v. Klote, Mo.App., 438 S.W.2d 287; Prentice v. Rowe, Mo. App., 324 S.W.2d 457.

Some explanation of the physical situation relative to the subdivision in question need be stated for understanding of the facts. The subdivision is laid out on a lake, and the lots here in question are shoreline lots. The street fronting the three lots here involved forms a right angle at the frontage of these lots. Lots 15 and 16 front on the east-west portion of the angle. Lot 14 fronts on the north-south portion of the angle formed by the road.

Websters had contacted LeBlanc concerning the purchase of a lot sometime during 1969. At that time they viewed several lots and some discussion was had concerning Lot 15 and a portion of Lot 16. Lot 15 had only 30 feet of frontage on the street, and so Webster suggested a subdivision of Lot 15 so as to create one large lot from Lot 16 and the frontage of Lot 15 with a pie-shaped piece of 15 added to 14. This lot would have had 203 feet of frontage. This pie-shaped tract was 100 feet

2. The annotation in 40 A.L.R.3d 864 at page 878 indicates that the position of Ohio on this question may be "uncertain." Our research has disclosed no cases con-

trary to the holdings in New Jersey, Kentucky, Georgia, Colorado, California, Maryland, and Massachusetts herein cited.

along the shoreline and narrowed to a point at the angle of the road. Webster and LeBlanc agree that at that time Webster had demonstrated house plans which required more front footage than afforded by Lot 14 which has only 153 feet of frontage. Webster then reduced the size of the house contemplated and in 1970 contacted LeBlanc concerning a lot. At that time Webster had complete drawings for the contemplated structure. These were exactly the same as the plans originally demonstrated except that the size of rooms had been reduced, thus shortening the overall frontage of the house. They did not include a plot or site plan. The plans did include "elevations" showing the visualization of the front, rear and side of the house and which include a grade line and dotted lines showing the basement and footings. These plans when considered as placed on any portion of the lot finally purchased would show the garage driveway on the north side of the lot. We have indicated that we do not feel that it is necessary to consider the question of estoppel in this case, but the evidence that such plans were demonstrated is relevant to the issue of the reasonableness of plaintiffs' refusal to approve the plans after purchase of the lot.

Defendants then purchased the premises here involved which includes all of Lot 14 and a triangular or pie-shaped portion of Lot 15 which measures 100 feet at the shoreline and comes to a point at the northwest corner of Lot 14.

Defendants asserted that the portion of the adjoining Lot 15 which is included in their deed was added to permit construction of the driveway on the north. Plaintiffs deny this was the reason for the addition of the extra land saying that only on the day the "deal" was made did the defendant Webster ask if the extra land was included, and that defendants did not even know where it was, and plaintiff LeBlanc showed him the stake on the shoreline.

It is manifest, however, that the portion of Lot 15 would be required to build the house indicated on the plans demonstrated to the plaintiff at the time of the purchase. The "proposed" plot plan of defendants shows that if the house were centered on the land, the drive on the north extends beyond the north line of Lot 14 and upon the portion of Lot 15 purchased by defendants. This same exhibit contains the plot plan "requested" by defendants and shows that if the plans were "reversed," as plaintiff suggests they should be, the house *and* drive would be entirely on Lot 14 and the portion of Lot 15 purchased would not be required to accommodate the house and drive.

These modified plans showed a depth of seven feet to the floor of the basement and plumbing connections at or below the floor level. The sewer for the property is located so that the sewer presently terminates at a point approximately eighty feet inside the front property line, at which point the sewer is approximately eight feet deep in the ground. We have not been furnished a topographical survey of the property, but defendants have introduced in evidence a plot plan for the proposed construction which includes some topographical data.

The house as required by the restrictions is to face west. The plot plan and the evidence show that the lot slopes sharply to the east and that the slope is less severely downward to the south. The land thus slopes to the east and the south of the house. In order to build the house shown, the basement floor level must be at or near ground level, this because the basement drain must be higher than the existing sewer line. Apparent then from the physical facts known to all the parties is the necessity for a fill on the front and sides of the house. Likewise, a fill must be made to approach the garage contemplated. This fill is required whether the drive be on the south or the north.

Plaintiffs insist this should be made on the south side of the house. Defendants planned and contend for a drive on the north of the house. All the evidence

**652**

shows that the fill, if made to the south, will be greater, and the drive will be longer. The exhibit offered by the defendants also demonstrated that the drive on the south side will cause a high fill around trees existing on the lot. The defendants' only complaint on the record before us is their assertion that the "high" fill of at least seven feet would create an unsightly condition for one other lot (Lot 15) and their conclusion that "it would devaluate Lots 15 and 16 the whole addition as a whole." The documentary evidence demonstrates that the fill on the south will be 8'6" at the highest point if plaintiffs' suggestion be followed. The driveway, if on the north will extend approximately sixty feet to the property line on the north; it will be one hundred twenty feet long, excluding turn arounds, if on the south. Pictures offered in evidence and admissions of plaintiff show that many homes in the subdivision have fills and retaining walls to permit construction on the obviously rolling terrain.

When these facts are considered against the background of the rule we have announced, that such a requirement of prior consent must be reasonably exercised, we are not persuaded that the refusal of consent in this case was reasonable. Only plaintiffs claimed the driveway would be unsightly on the north (even though shorter and with less fill). No evidence of diminution of value other than plaintiffs' bare assertion appears. No violation of the basic restrictions exists, and the evidence demonstrates that fills and retaining walls are common in the area.

The evidence considered as a whole does not establish plaintiffs' right to injunctive relief based upon a reasonable refusal to approve the defendants' plans. The trial court's injunction is dissolved, and the cause remanded with directions to enter judgment for defendants.

SHANGLER, C. J., and CROSS, J., concur.

PRITCHARD, SWOFFORD, and WASSERSTROM, JJ., not participating because not members of court at the time the case was submitted.