Robert BENNETT and Linda Bennett, John Stewart and Phyllis Stewart, Jim Fountain and Ladonna Fountain, and Vick Bland and Gail Bland, Appellants,

v.

Jack P. HUWAR and Debra S. Huwar, Respondents.

No. WD 39271.

Missouri Court of Appeals, Western District.

Feb. 23, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1988.

Application to Transfer Denied May 17, 1988.

Joseph A. Hamilton, Pleasant Hill, Joe F. Willerth, Independence, for appellants.

John C. Milholland, Anderson and Milholland, Harrisonville, for respondents.

Before CLARK, P.J., and TURNAGE and MANFORD, JJ.

CLARK, Presiding Judge.

Appellants commenced this suit for injunctive relief to prohibit respondents from continuing construction of a residence in Cass County contended to be in violation of restrictive covenants. The trial court denied relief.

Appellants contend the trial court erred as a matter of law because the decision operated to reverse the decision of a homeowners' architectural control committee made in the reasonable exercise of discretionary authority with which they are vested under restrictive covenants running with the subject land.

The property in question is a residential subdivision of rural land known as Jamison Acres. Each lot is of considerable size, the smaller lots being five acres. As of the applicable date, there were nine residences in the subdivision in addition to that of respondents. Barns and metal outbuildings, common to the rural setting, are in place on many of the lots and owners are permitted to keep cows and horses for personal use on their properties.

The Jamisons, who evidently platted the ground into lots, own a ten acre tract across the road from respondents' property and the original Jamison farmhouse lies in the north portion. The local water supply district utilizes the field to park its heavy equipment. The homes which have been built in the area are substantial and many range in price from $125,000 to $180,000.

Respondents purchased their property in Jamison Acres October 13, 1986. They commenced construction almost immediately of an "earth contact home." Such a structure is defined to be energy efficient with at least one wall below earth grade. An earth contact home must face south for maximum efficiency. In the case of respondents, whose lot lies on the south side of Jamison Road, this means that the portion of the home which is below ground fronts on Jamison Road. An earth contact home such as respondents have built has a conventional roof but on that side where the wall is below ground the roof eave is near ground level. A basement house, prohibited by Jamison Acres restrictions, differs from an earth contact home in that a basement home consists of a full basement with the top surface temporarily covered by tar paper or similar material, and is used by the owner until construction of the upper level is commenced.

Jamison Acres is covered by Protective Covenants and Restrictions, admittedly in force long before respondents purchased their lots. The following paragraphs from the restriction agreement are applicable to this suit.

No building, fence, wall or other structure shall be commenced, erected, or maintained, nor shall any addition thereto or change or alterations therein be made, until plans and specifications, color scheme, plot plan and grading plan therefor, or other information which may be required shall have been submitted to the Architectural Control Committee for approval, and a copy thereof, as finally approved, lodged with such Architectural Control Committee. In so passing upon such plans, specifications, and other requirements, the Architectural Control Committee may take into consideration the stability of the proposed building or other structure and the materials of which it is to be built, to the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure as planned on the outlook from adjacent or neighboring property.

The Architectural Control Committee shall be composed of John C. Jamison, Joy D. Jamison, Lloyd H. Hill and two other members, to be property owners of tracts herein described. A majority of the committee may designate a representative to act for it. In the event of death or resignation of any member of

the committee, the remaining members shall have full authority to designate a successor, and shall have the power to designate their own successors.

The committee's approval or disapproval as required in this Section shall be in writing. In the event the committee, or its designated representatives fail to approve or disapprove within thirty (30) days after plans and specifications have been submitted to it, approval will not be required and the related restrictions shall be deemed to have been fully complied with.

Respondents did not have approval of the Architectural Control Committee when they broke ground for their house. Plans were considered by the Committee October 30, 1986, but were returned to respondents because they were incomplete. Additional plans were furnished but there was no plot plan, grading plan, color scheme, electrical plan, water plan or survey. The Committee notified respondents on November 12, 1986 that the plans were rejected. The Committee was especially concerned that the unattractive back of the house faced Jamison Road. Respondents' construction work was proceeding, however, and on November 24, 1986, this suit for injunction was filed.

A hearing on the petition for temporary injunction was held and on January 23, 1987, the court entered a "temporary restraining order" prohibiting further construction by respondents until February 9, 1987. The basis for the order was the failure by respondents to furnish adequately detailed building plans to the Committee. Respondents were instructed to have the plans in the Committee's hands by February 9, 1987 and the cause was continued to that date.

Respondents furnished additional plans to the Committee between February 2 and February 26, 1987. Ultimately, the objections by the Committee to the form and extent of the building plans were satisfied, but approval of construction was denied because of the placement of the house facing away from Jamison Road. The objection to the location of the house on the lot was attributable in large measure to the elevation which faced the road, that is, a wall substantially below ground with only the roof showing from the street. The Committee found this construction not to be in harmony with the rest of the neighborhood.

The court reconvened the hearing on the petition for injunction February 26, 1987. The court observed that all issues in the case seemed to be settled except the question of whether an earth contact home was in harmony with the surroundings in Jamison Acres. The court had at earlier sessions indicated its opinion to be that such a structure was not inharmonious with the surroundings, an opinion the court expressed repeatedly throughout the progress of the case. In rendering judgment on February 26, 1987, the court restated the earlier expressions of this opinion and indicated by its remarks that it regarded the only issue in the case to be whether or not the earth contact home "is in harmony with the rest of the subdivision." Finding that it was, the court denied the injunction.

■ It is apparent from this record that the trial judge regarded it to be his function to pass upon the same issue decided by the Committee when it rejected respondents' request to approve their construction plans. In effect, the court undertook to decide anew whether the proposed building should be approved, taking into account the factors which the Protective Covenants and Restriction Agreement instructed the Committee to consider. The Committee had rejected the plans, as we construe the record, because an earth contact home, constructed as was respondents' house to be, facing away from the street, presented the appearance of a basement home with only a roof above ground. The Committee found such a structure, unlike any other residence in the subdivision, to be not in harmony with the surroundings. The trial court held the opposite view. In so construing the issue before it, the trial court was in error.

We note at this point that the Jamison Acres restrictions do not specify that a

residence must be constructed to face the street side of the lot. Also, the restrictions do not expressly require new construction to be harmonious with the surroundings in the subdivision. These considerations are, however, implicit in the restrictions because the Committee is instructed to consider, in reviewing plans for approval, the harmony of proposed construction with the surroundings and the effect of the planned structure on the outlook from neighboring properties.

One of the most frequently cited cases on the question of subdivision building restrictions is *LeBlanc v. Webster*, 483 S.W. 2d 647 (Mo.App.1972). *LeBlanc* considered the problem posed by restrictions, such as those here, requiring permitted construction to be in harmony with the surroundings. The contention was made in *LeBlanc* that restrictions having no external standard governing approval of plans were vague and unenforceable because they authorize arbitrary denial of property usage. *LeBlanc* rejected this contention and held the restrictions to be valid so long as they are reasonably exercised. *Id.* at 650. The opinion also held that a reasonable exercise of the restrictive power included rejection of a proposed building which was not consistent and harmonious with the overall plan or actual construction within the subdivision. *See Id.*

*LeBlanc* was cited and followed in *Melson v. Guilfoy*, 595 S.W.2d 404, 407 (Mo. App.1980), in holding that no external standards are necessary with respect to indentures requiring prior approval so long as the discretion to grant or withhold is reasonably exercised. The issue in *Melson* was the construction by the defendants of a fence which had not been approved by the subdivision trustees.

*Ashelford v. Baltrusaitis*, 600 S.W.2d 581, 587 (Mo.App.1980), and *Marose v. Deves*, 697 S.W.2d 279, 288–89 (Mo.App. 1985), cite *LeBlanc* with approval and also note that the issue for judicial consideration is whether, in circumstances where the architectural committee or subdivision trustees have denied approval of construction, the power has been exercised reasonably. *Marose*, 697 S.W.2d at 289. The conclusion necessarily follows that a court considers a petition to enforce or to avoid a decision by a review committee to deny permission for construction only in the context of the reasonableness of the decision. Even though a court may disagree on an issue such as harmony and disharmony, the court is not entitled to substitute its opinion for that of the committee if the committee has acted reasonably.

In the present case, there was no claim by respondents that the Committee members acted unreasonably or arbitrarily in denying approval of respondents' planned construction, nor did the court refuse to enforce the decision by the Committee because it was unreasonable. Instead, the court substituted its opinion for that of the Committee members as to whether an earth contact home was harmonious with the surroundings in Jamison Acres. In effect, the court gave respondents a de novo hearing on their request for approval of their plans.

This approach by the trial court to the case was expressed, not only by the court's repeated comments initially made before the evidence was concluded, but by its statement of reasons for the decision. The court stated that an earth contact home was harmonious with the surroundings because the lot sizes were large, barns and livestock were permitted and an old farmhouse was across the street. The court was simply deciding how it would pass upon an application to build an earth contact home in an area such as Jamison Acres. That decision was one to be made by the Committee under the restriction agreement and was conclusive if reasonable under the circumstances. Because there was neither a contention nor evidence or a finding that the decision was unreasonable, the court erred in not granting relief to appellants.

The decision to grant injunctive relief to appellants, a necessary consequence of the conclusion stated above, does not conclude this litigation. Respondents have a structure in place which cannot remain in its present state. We are not unmindful of

the economic impact on respondents, but to an extent, the consequence is of their own making. They persisted with construction of the improvements with full knowledge that they had no approval and were in violation of the restrictions. The unavoidable consequence of enforcement of restrictions in such cases is economic loss.

Appellants' petition sought the court's protection in requiring respondents to comply with the restrictions. In the present status of the case, respondents must modify the existing structure to design and erect a residence which is in harmony with the surroundings in the subdivision or, as a less desirable alternative, build a new structure on the location of the old. In either event, the plans for such improvements must be submitted to and approved by the Architectural Control Committee. In view of past controversy, it appears likely that the assistance of the court will be required to assure compliance with the restrictions and to issue a mandatory injunction if needed and in the event the parties do not resolve their problems by agreement. The cause must therefore be remanded for further action consistent with this opinion.

Respondents have made various affirmative claims in their brief including contentions that appellants' brief is defective and procedural attacks on the notice given respondents as to disapproval of their plans. Those claims have been considered and found to be without merit.

The judgment of February 26, 1987, denying appellants' petition for injunction is reversed. The case is remanded to the trial court with directions to grant appellants' petition and to afford such further and additional relief as may be appropriate in the circumstances consistent with the views expressed in this opinion.

All concur.