

# Missouri Court of Appeals
## Southern District
### Division Two

STANLEY SELLERS,                              )
                                             )
    Plaintiff-Appellant,             )
                                             )
vs.                                          )    No. SD33312
                                             )
WOODFIELD PROPERTY OWNERS                     )    Filed January 29, 2015
ASSOCIATION,                                  )
                                             )
    Defendant-Respondent.            )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Mark E. Orr, Circuit Judge

AFFIRMED

Stanley Sellers appeals from the trial court judgment ordering removal of a storage building located on his property. Sellers raises four points on appeal, ultimately arguing that the trial court erred because a prohibition of all storage buildings is not allowed in the property covenants and is unreasonable. Finding no merit in any of Sellers's claims, the trial court's judgment is affirmed.

**Factual and Procedural Background**

Sellers has owned a home in the Woodfield subdivision of Nixa since 2011. Before purchasing his home, Sellers became familiar with the "Declaration of Restrictions, Covenants and Conditions of Woodfield Subdivision" ("the Covenants"). The Covenants provide that "[n]o

1

structure whatsoever shall be erected, placed, or permitted to remain on any Lot except one detached one-family dwelling with any appurtenant accessory structure or structures approved by the Architectural Committee." The Architectural Committee is composed of three members of the Woodfield Property Owners Association ("the POA"). The Covenants state that the Architectural Committee "shall develop guidelines and policies for the development and [sic] of a residential community which is harmonious and aesthetically pleasing." The Architectural Committee established guidelines and policies by accepting rules enacted and enforced by the original developer. The policies are set out in a document entitled "Woodfield Minimum Building Requirements" ("the Requirements") and have been publicly available online at the POA's website since 2010.

Shortly after purchasing his home, Sellers constructed an outdoor kitchen with the prior approval of the Architectural Committee. Without seeking the prior approval of the Architectural Committee, however, Sellers then began construction of a storage building to store lawn equipment.[1] After construction began on the storage building, Sellers was contacted by the POA and advised that his storage building violated a provision of the Requirements, which states: "Storage buildings or utility buildings are not allowed." There are no other storage buildings in the subdivision. Sellers initially sought a waiver from the POA and the Architectural Committee. The POA declined to amend the Requirements at a special meeting.

---

[1] The structure in this case is categorized many different ways in the record: accessory building, storage building, shed, etc. The Covenants address the regulation of "appurtenant accessory structure[s]," and the Requirements speak more specifically to prohibiting "[s]torage buildings or utility buildings." At oral argument, it was clarified that the parties have used the term "accessory building" synonymously with the Covenants' reference to "appurtenant accessory structure[s]." For clarity, we refer to Sellers's building as a storage building. Although "storage building" is not defined in any of the property ownership documents, there seems to be no disagreement among the parties that the storage building falls within both the Covenants' regulated "appurtenant accessory structure[s]" and the Requirements' "[s]torage buildings or utility buildings" prohibition.

After the Architectural Committee also denied his request for approval via letter,[2] Sellers asked the trial court to declare that his storage building was not in violation of the Covenants.

Following a bench trial, the trial court entered judgment for the POA and concluded that the Requirements were not a "new burden" on property ownership greater than that set forth in the Covenants but rather were validly enacted and in effect when Sellers purchased his property. The trial court also concluded that neither the Requirements nor the decision to deny Sellers's storage building was arbitrary or unreasonable and that Sellers had knowledge of the Requirements. This appeal followed.

## Standard of Review

The judgment in this court-tried case will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A court reviewing the decision of an architectural committee reviews only for reasonableness and does not substitute its opinion as to harmony or disharmony. *Bennett v. Huwar*, 748 S.W.2d 777, 780 (Mo.App. 1988).

## Discussion

Sellers raises four points on appeal.[3] First, Sellers contends that the trial court erred as a matter of law in that the Requirements unlawfully place a greater burden on property ownership

---

[2] This letter purports to be a denial by the POA's board of directors. Because there were no volunteers to be on the Architectural Committee, the three-person board of directors for the POA assumed the duties of the Architectural Committee. We understand this letter to be authored by the board of directors acting in their capacity as the Architectural Committee.

[3] All four of Sellers's points claim that the trial court's decision was "not supported by substantial evidence, against the weight of the evidence, and erroneously declared or applied the law." These are "distinct claims" and "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, 439 S.W.3d 189, 199 n. 11 (Mo. banc 2014). Nevertheless, Sellers's arguments under his first and second points failed to address three of his four alleged claims. Therefore, our review has excluded those claims that were abandoned by

3

than the Covenants allow. Second, Sellers contends that the trial court erred as a matter of law because the prohibition of accessory buildings was arbitrary and unreasonable. Third, Sellers contends that his failure to seek the approval of the Architectural Committee should not be held against him. Fourth, Sellers contends that the trial court's finding that he had knowledge of the Requirements was either against the weight of the evidence or not supported by substantial evidence. Because we ultimately determine that the Requirements did not place a new burden on Sellers's ownership of his property and that the Architectural Committee did not act arbitrarily or unreasonably, Sellers's third point becomes moot. Sellers's fourth point fails because he does not challenge a factual proposition necessary to sustain the judgment.

### *Requirements Did Not Place a Greater Burden on Ownership than the Covenants*

Sellers contends that the Requirements place a "new burden" on his property ownership, which violates this Court's previous holding that "a new restrictive covenant, adopted by majority vote only, is invalid and unenforceable if it imposes new burdens upon the affected property owners[,]" citing *Bumm v. Olde Ivy Dev., LLC*., 142 S.W.3d 895, 903 (Mo.App. 2004). The case law on "new burdens" is discussed extensively in *Harris v. Smith*. 250 S.W.3d 804, 809-10 (Mo.App. 2008) (citing *Van Deusen v. Ruth*, 125 S.W.2d 1 (Mo. 1938), *Hazelbaker v. Cnty. of St. Charles*, 235 S.W.3d 598 (Mo.App. 2007), *Webb v. Mullikin*, 142 S.W.3d 822 (Mo.App. 2004), *Bumm*, 142 S.W.3d 895, and *Jones v. Ladriere*, 108 S.W.3d 736 (Mo.App. 2003)). The basic fact pattern underlying all of the cases set forth in *Harris* and *Harris* itself is: A subdivision is restricted by a set of covenants. Those covenants allow amendment by majority vote. Property owners set out to "amend" the covenants, but, in effect, add entirely new

---

Sellers. *In re Marriage of Roedel*, 550 S.W.2d 208, 211 (Mo.App. 1977) ("Because the argument section of appellant's brief fails to develop his contention and because appellant cites no authority in support of this point, appellant's contention is deemed abandoned.").

4

covenants. For example, in *Harris*, the original covenants allowed for outbuildings that blended with the décor of the home. *Harris*, 250 S.W.3d at 807. These covenants were amended to restrict the number and size of outbuildings. *Id.* The change was approved by a majority of homeowners, but two homeowners did not approve. *Id.* This was a held to be invalid. *Id.* at 809.

Based on *Harris*, Sellers argues that the Requirements place a greater burden on his property ownership than the Covenants because the Covenants allow him to have an accessory building subject to the approval of the Architectural Committee and the Requirements totally prohibit a subcategory of accessory buildings without first having received "100% approval of property owners[.]" Sellers's argument fails because it misconstrues the burden created by the Covenants. Unlike in *Harris*, the Covenants in this case provide for an Architectural Committee that is required to "develop guidelines and policies for the development and [sic] of a residential community which is harmonious and aesthetically pleasing."

Sellers argues that a prohibition on accessory buildings is ineffective without 100 percent approval of property owners, but he does not cite any authority under which a court held that the *only* way to control accessory buildings is to receive 100 percent approval by property owners. To do so would essentially invalidate the provision within the Covenants that requires the Architectural Committee to create guidelines and policies. He also cites no authority from which we could conclude that restrictive covenants cannot or should not grant an architectural committee the power to make guidelines. In *Vill. of Pheasant Run Homeowners Assoc., Inc. v. Kastor*, 47 S.W.3d 747, 752 (Tex.App. 2001), an architectural committee was given authority to establish minimum guidelines concerning exterior design and color of homes within a subdivision. The Texas Court of Appeals held that because the language of the deed made it

5

clear that a committee existed and the committee had authority to establish independent standards, the homeowners could be held to those standards. *Id.* at 753. Similarly, the policies here are not a new burden because the Covenants have always provided for their creation. Sellers's first point is denied.

### *Architectural Committee Did Not Act Unreasonably*

Sellers's second 'Point Relied On' contends that the trial court erred because the Architectural Committee's denial of his request to maintain his storage building based on a total prohibition of accessory buildings was unreasonable.[4] Sellers's argument is solely premised on distinguishing one case, *LeBlanc v. Webster*, 483 S.W.2d 647 (Mo.App. 1972). *LeBlanc* holds that restrictions requiring prior approval or consent to the erection of structures are valid but such restrictions must be reasonably exercised. *Id.* at 650. In *LeBlanc*, one party argued that decisions by architectural committees were unreasonable unless there was some external standard to control the committee's discretion. *Id.* at 649. *LeBlanc* rejected that argument by subjecting the committee's discretion to a reasonableness standard. *Id.* *See also* 20 AM. JUR. 2d *Covenants*, *Conditions, and Restrictions* § 224 (2008) ("Architectural review pursuant to a restrictive covenant is suspect . . . due to its tendency to be arbitrary, capricious, and unreasonable; such review must be done reasonably and any doubts as to its reasonableness will be resolved in favor of the landowners.").

Sellers attempts to distinguish *LeBlanc* by arguing that the Requirements inappropriately remove the Architectural Committee's ability to give prior approval or consent because

---

[4] Sellers's point relied on actually states that the POA denied his request, not the Architectural Committee. Although the board of directors did decline to amend the storage building provision of the Requirements at a special meeting, reliance on *Leblanc* clarifies that what Sellers actually appeals is the Architectural Committee's letter denying his belated and untimely request for approval. As stated in note 2, although this letter purports to be authored by the POA's board of directors, we understand the board to be acting in its capacity as the Architectural Committee.

accessory buildings are allowed by the Covenants but totally prohibited by the Restrictions. Reliance on *LeBlanc* in this manner is misplaced for two reasons.

First, Sellers's argument under this point hinges on a belief that a blanket prohibition of accessory buildings is unreasonable because an architectural committee must exercise discretion on a case-by-case basis.[5] This argument fails because it misconstrues the property ownership documents. The property ownership documents did not prohibit all accessory buildings. Rather, the property ownership documents required that accessory buildings be approved by the Architectural Committee. Moreover, the Architectural Committee has not enforced a complete ban on accessory buildings either, as evidenced by its approval of Sellers's outdoor kitchen.

Second, the existence of the Requirements should be a comfort to property owners because they remove some measure of opportunity for arbitrariness from the Architectural Committee's actions. At trial, Sellers presented the testimony of Rick Muenks, a real estate attorney. Muenks testified that giving standards to an architectural committee is "favored" because it helps to "avoid the ambiguity or inconsistencies that may exist." Indeed, the reasonableness standard that was originally introduced in *LeBlanc* arose because of a fear induced by the *lack* of standards governing architectural committees. *Id.* at 650. Therefore, *LeBlanc* does not support Sellers's argument that discretion was inappropriately removed. Rather, it supports the reasonableness of the Architectural Committee's decision because its exercise of discretion granted by the Covenants was based upon objective standards in the Restrictions applied consistently to all properties in the subdivision.

Sellers's second point is denied.

---

[5] Sellers does not argue that the ban on storage buildings is not reasonably related to the harmony of the neighborhood.

***Whether Sellers Asked Permission of the Architectural Committee is Moot***

Sellers contends his attempt to seek the approval of the Architectural Committee after constructing the storage building rather than before, as required by the Covenants, should not be held against him because his efforts would have been futile. Because we ultimately conclude that the Requirements (and therefore the total prohibition on storage buildings) are enforceable against Sellers, whether he was excused in failing to ask permission before building is moot because the Architectural Committee would still have been justified in demanding removal of the storage building. *See **Armstrong v. Elmore***, 990 S.W.2d 62, 64 (Mo.App. 1999) ("When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed.") (citing ***State ex rel. Chastain v. City of Kansas City***, 968 S.W.2d 232, 237 (Mo.App. 1998)). Sellers' third point is denied.

***Sellers' Knowledge of Requirements is Not Necessary to Sustain Judgment***

Sellers contends in his final point that the trial court's judgment was either against the weight of the evidence or not supported by substantial evidence, or both, as to its conclusion that Sellers had knowledge of the Requirements before purchasing his lot. A cogent argument supporting either contention requires an appellant to "identify a challenged factual proposition, the existence of which is necessary to sustain the judgment." ***Houston v. Crider***, 317 S.W.3d 178, 187 (Mo.App. 2010). Because Sellers has failed to demonstrate why the existence of his knowledge of the Requirements is necessary to support the judgment, Sellers' fourth point is denied.[6]

---

[6] Sellers admitted that he had actual knowledge of the Covenants. As discussed, *supra*, the Covenants, not the Restrictions, imposed the burden upon his property mandating that the construction of any accessory structure upon his property required the prior approval of the Architectural Committee in accordance with the guidelines adopted by it.

## **Decision**

The trial court's judgment is affirmed.


GARY W. LYNCH, J. – Opinion author

MARY W. SHEFFIELD, P.J. – concurs

DON E. BURRELL, J. – concurs