

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| THE LAKE AT TWELVE OAKS HOME ASSOCIATION, INC., A MISSOURI NOT-FOR-PROFIT CORPORATION, | ) ) ) ) ) | |
| Respondent, | ) ) | |
| vs. | ) ) | WD78516 |
| MATTHEW SCOTT HAUSMAN, INDIVIDUALLY AND STACEY D. HAUSMAN, TRUSTEE OF THE HAUSMAN REVOCABLE TRUST DATED 5-5-1999, | ) ) ) ) ) ) | Opinion filed:  April 19, 2016 |
| Appellants. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI
THE HONORABLE RANDALL R. JACKSON, JUDGE**

Before Division One:  Victor C. Howard, Presiding Judge,
Gary D. Witt, Judge and Zel Fischer, Special Judge

Matthew S. Hausman and Stacey D. Hausman, Trustee of the Hausman Revocable Trust dated 5-5-1999, appeal the judgment of the trial court in favor of The Lake at Twelve Oaks Homes Association, Inc. ordering the removal of part of the solar energy system erected on their premises.  They raise five points on appeal contending that the judgment is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law.  They also assert that the trial court erred in excluding additional evidence offered as

part of their motion for new trial. The judgment is affirmed. The Association's motion for attorney fees on appeal is sustained, and the case is remanded.

## Factual and Procedural Background

The Lake at Twelve Oaks Homes Association, Inc. (the Association) consists of homeowners subject to the Declaration of Covenants, Conditions and Restrictions for The Lake of Twelve Oaks, a subdivision in St. Joseph, Missouri. One provision of the Declarations requires homeowners to submit written plans and specifications and obtain written permission from the Association's Design Review Committee (DRC) prior to construction or alteration of a structure that materially changes the exterior appearance of the property.

In July 2012, the Hausmans installed a photovoltaic solar array system on various roofs and on the ground of their property located within the subdivision at 3216 Harbor View Drive. Prior to installation of the system, the Hausmans did not submit any written plans or specifications to or obtain permission from the DRC for the system. At the time the system was installed, Matthew Hausman was a member of the DRC. The City issued building and electrical permits for the solar array system on August 2, 2012. On August 17, 2012, the Association sent a demand letter to the Hausmans, which specified that installation of the solar arrays violated the Declarations and demanded that the system be removed within thirty days. The Hausmans did not remove the system.

On September 16, 2012, at the request of the Association's board, the DRC adopted guidelines for the installation of solar systems within the subdivision (Solar Guidelines). Thereafter, the Association brought an action against the Hausmans seeking permanent injunction and attorney fees. Their petition alleged that the Hausmans violated the Declarations

2

when they installed the solar arrays without submitting plans and specification or obtaining written permission of the DRC.

A trial was conducted on the Association's petition and the Hausmans' counterclaim for declaratory judgment. Following trial, the trial court, to prevent economic waste, issued an interlocutory judgment ordering the Hausmans to present their plans for the solar array system to the DRC on or before June 15, 2013, and the DRC to review the plans and determine whether they are approved in total, in part, or not at all.

After the trial court's interlocutory judgment, the St. Joseph City Council enacted an amendment to its zoning ordinances on July 8, 2013, that addressed the issue of installation of solar energy systems within the city limits. Section 31-366(a) of the ordinances provides, "No homeowners' agreement, covenant, common interest community, or other contract between multiple property owners within a subdivision shall restrict or limit solar energy systems to a greater extent than these regulations." The Association's Solar Guidelines are more restrictive than the City's solar ordinances.

In the meantime, the Hausmans submitted their plans and specifications for their constructed solar energy system to the DRC for its approval. The plans requested acceptance of the system as built, proposed additional screening on neighboring property, and included neighbors' statements indicating their approval of the system. On July 10, 2013, the DRC met with Mr. Hausman, reviewed the plans and specifications submitted, and rejected those plans in part. The DRC met again on August 28, 2013, to clarify its July 10 decision, approving part of the Hausmans' solar array system consisting of the panels installed on the rear roof of the main dwelling but rejecting the part of the system that included the panels installed on the side roof of the garage and the ground-mounted panels located on the south side of the garage. The DRC's

3

decision was based on a provision of the Solar Guidelines that requires panels be constructed within a fenced yard or patio to the rear of the main structure and also on consideration of the character of the subdivision, individual homeowner complaints and lack of complaints, the authority granted to the DRC to make decisions based upon aesthetics, incompatibility with surrounding properties, and the impact on the value of surrounding properties.

Thereafter, the Hausmans amended their counter-petition for declaratory judgment requesting declarations that the Association's Solar Guidelines are more restrictive than the City's new ordinances on solar energy systems and thus unenforceable and that their solar array system is permitted under the City ordinances. The Association also amended its petition alleging that pursuant to the court's interlocutory order, the Hausmans had submitted their plans and specifications for the solar array system and the DRC had reviewed them and disapproved some of the arrays. The amended petition further alleged that the Hausmans had not removed the non-approved arrays as demanded and requested permanent injunction and attorney fees.

Following a second trial, the trial court entered judgment on December 17, 2013, ordering the Hausmans to remove the part of their solar array system consisting of the panels erected on the garage and the ground-mounted panels on the south side of the garage. It found that the DRC did not act arbitrarily and that the City's solar ordinances did not invalidate or render unenforceable the Association's Solar Guidelines.

The trial court set aside the judgment on March 28, 2014, for failure to add the City as an indispensable party and to notice the Missouri Attorney General. The City was joined as a party, and the Attorney General elected not to participate. In its answer, the City pleaded that the ordinance enacted on July 8, 2013 was not intended to be applied retroactively, was intended to affect homeowners associations from the date of passage forward, and was not intended to

4

deprive homeowners' associations of any contractual rights that might exist under the covenants of the association.

Following a third trial on the matter, the trial court entered judgment on October 28, 2014, in favor of the Association and again ordered the Hausmans to remove those solar arrays not approved by the DRC. It found that the City's solar ordinances cannot be applied retroactively to the Association's Solar Guidelines or to the Hausmans' solar energy system and that the DRC's decision was reasonable and not arbitrary or capricious. Finally, it awarded the Association attorney fees in the amount of $38,500. This appeal by the Hausmans followed.

**Standard of Review**

An action seeking injunctive relief is an action in equity. *City v. Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 263 (Mo. App. W.D. 2010). In a court-tried equity case, the trial court's judgment will be upheld unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* To the extent that the trial court's grant of injunctive relief involves weighing the evidence, determining the credibility of witnesses, and formulating an injunction of the appropriate scope, the appellate court reviews for abuse of discretion. *Id.* However, questions of law are reviewed de novo. *Id.*

**Analysis**

In the first points addressed in this appeal, the Hausmans challenge the trial court's judgment that the DRC's decision disapproving part of their solar energy system was reasonable and was not arbitrary and capricious. They argue that the judgment is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law. They also assert that the trial court erred in excluding additional evidence offered as part of their motion for new trial.

5

The law favors the free and untrammeled use of real property. *Country Club Dist. Homes Ass'n v. Country Club Christian Church*, 118 S.W.3d 185, 189 (Mo. App. W.D. 2003)(internal quotes and citation omitted); *Proetz v. Central Dist. of Christian & Missionary All.*, 191 S.W.2d 273, 277 (Mo. App. 1945). But the right of one property owner to the protection of a restrictive covenant is a property right just as inviolable as is the right of others to the free use of their property when unrestricted. *Marose v. Deves*, 697 S.W.2d 279, 289 (Mo. App. S.D. 1985); *Proetz*, 191 S.W.2d at 277.

Restrictive covenants are private contractual obligations generally governed by the same rules of construction applicable to any covenant or contract. *Woodglen Estates Ass'n v. Dulaney*, 359 S.W.3d 508, 513 (Mo. App. W.D. 2012). Because restrictive covenants are not favorites of the law, when interpreting such, courts must give effect to the intent of the parties as expressed in the plain language of the covenant. *Blevins v. Barry-Lawrence County Ass'n for Retarded Citizens*, 707 S.W.2d 407, 408 (Mo. banc 1986). If any ambiguity or substantial doubt as to the meaning exists, restrictive covenants will be read narrowly in favor of the free use of property. *Id.* But if a covenant is not ambiguous, it is not open to judicial construction. *Mackey v. Griggs*, 61 S.W.3d 312, 315 (Mo. App. S.D. 2001). Valid restrictive covenants cannot be disregarded. *Id.*

Subdivision building restrictions adopted for the purposes of preserving beauty and utility and enhancing the value of residential property are valid, and injunction is the proper remedy for their violation. *Virdon v. Horn*, 711 S.W.2d 205, 207 (Mo. App. S.D. 1986); *Lake St. Louis Cmty. Ass'n v. Kamper*, 503 S.W.2d 447, 449 (Mo. App. 1973). Likewise, covenants requiring prior approval or consent to the erection of structures and allowing disapproval if structure is not in harmony with general surroundings of the subdivision are valid if reasonably exercised.

*Sellers v. Woodfield Prop. Owners Ass'n*, 457 S.W.3d 357, 361 (Mo. App. S.D. 2015); *Bennett v. Huwar*, 748 S.W.2d 777, 780 (Mo. App. W.D. 1988); *LeBlanc v. Webster*, 483 S.W.2d 647, 650 (Mo. App. 1972). External standards governing approval of plans are not necessary where the discretion to grant or withhold consent is reasonably exercised. *Sellers*, 457 S.W.3d at 361; *Bennett*, 748 S.W.2d at 780; *Melson v. Guilfoy*, 595 S.W.2d 404, 407 (Mo. App. E.D. 1980); *LeBlanc*, 483 S.W.2d at 650. Reasonable exercise of such restrictive power includes rejection of a proposed structure that does not comply with specific restrictions of the subdivision. *LeBlanc*, 483 S.W.2d at 650. It also includes rejection of a structure that is not consistent and harmonious with the overall plan or actual construction within the subdivision or is in conflict (creating damages) with the neighboring properties. *Id.*; *Bennett*, 748 S.W.2d at 780. A court considering a decision of an association's review committee reviews only for reasonableness and does not substitute its opinion as to harmony or disharmony. *Sellers*, 457 S.W.3d at 359; *Bennett*, 748 S.W.2d at 780.

> Article XI, Section 6 of the Declarations in this case provides, in part:
>
> No structure shall be commenced, directed, placed or moved onto or permitted to remain on any properties, nor shall any existing structure upon any properties be altered in any way which materially changes the exterior appearances thereof nor shall any new use be commenced, all unless plans and specifications (including a description of any new use) therefore shall have been submitted to and approved in writing by the design review committee.

Section 8 of the same article grants the DRC the right to disapprove any plans and specifications submitted for any reason including, but not limited to, failure to comply with the Declarations or the design standards for the subdivision, incompatibility with the surrounding properties, a determination that the proposed construction would lower the value of or otherwise damage other properties in the subdivision, or a determination that the proposed construction would be inharmonious with the design standards for the subdivision.

The Hausmans first assert that the Declarations do not unambiguously prohibit structures such as their solar arrays and will not be extended by implication. They contend that because photovoltaic solar panels did not exist in the St. Joseph area at the time the Declarations were recorded in 1991, the Declarations could not have been intended to include solar arrays as a structure under section 6.

The Hausmans are correct that because restrictive covenants are not favored in law and are to be strictly construed, they will not be extended by implication to include anything not clearly expressed in them. *Bates v. Webber*, 257 S.W.3d 632, 638 (Mo. App. S.D. 2008)(quoting *Vinyard v. St. Louis County*, 399 S.W.2d 99, 105 (Mo. 1966)). "This principle, however, should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction." *Id.* (internal quotes and citation omitted). Where the meaning of a term is questioned, the language used must be given its ordinary and usual meaning absent any indications that some special or peculiar meaning was intended. *Skinner v. Henderson*, 556 S.W.2d 730, 734 (Mo. App. 1977).

As used in restrictive covenants, the term "structure" has been defined by Missouri courts as "a production composed of parts artificially joined together according to plan and design to accomplish a definite purpose," *Pringle v. Martin*, 810 S.W.2d 344, 345 (Mo. App. W.D. 1991)(quoting *Skinner*, 556 S.W.2d at 733), and "something composed of parts or portions which have been put together by human exertion." *Id.* (citing *Easy Living Mobile Manor, Inc. v. Eureka Fire Prot. Dist.*, 513 S.W.2d 736, 739 (Mo. App. 1974)). "Structure" has also been defined as:

> Any construction or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind. A combination of material, to

8

> form a construction for occupancy, use or ornamentation, whether installed on, above or below the surface of a parcel of land.

*Id.* (quoting *Sherwood Estates Homes Ass'n Inc. v. McConnell*, 714 S.W.2d 848, 850 (Mo. App. W.D. 1986)). The term is not synonymous with the term "building." *Id.*

"Restrictive covenants are intended to preserve the aesthetic and residential nature of the subdivision." *Bates*, 257 S.W.3d at 638 (internal quotes and citation omitted). Specifically in this case, as stated in the preamble of the Declarations, the restrictions are "for the purpose of promoting the common good and general welfare of the residents and owners of the Property and thereby *enhancing and protecting the value, desirability and attractiveness of the Property*." (emphasis added). While such recitals may not broaden the restrictions, this expression in the Declarations may be considered in determining the intent of the instrument. *Skinner v. Henderson*, 556 S.W.2d at 734. Article XI of the Declarations requiring that owners obtain approval for proposed structures that materially change the exterior appearance of the property is one provision of the Declarations intended to ensure the preservation and enhancement of property values, desirability, and attractiveness of the subdivision. "The word 'structure' is broad in concept but it is not ambiguous." *Id.* At the time the Declarations were recorded, as now, it was impossible to conceive of all construction or production that might come within the category of "structure" that the authors of the Declaration would want to be approved before installation in the subdivision. *Id.* The plain and obvious intent of the Declarations is that the DRC reviews all manner of construction that materially changes the exterior appearance of property to ensure the purposes of preservation and enhancement of property values, desirability, and attractiveness of the subdivision are met.

The photovoltaic solar energy system at issue here comprises five solar arrays designed and used to capture solar energy to convert to electricity. They are mounted on various roofs and

9

on the ground of the Hausmans' property. The arrays cover large portions of the roofs and almost the entire side of the garage and materially change the exterior appearance of the Hausmans' property. The solar arrays fall within the definition of structures. The trial court did not err in determining that the Hausmans' solar arrays were structures that required approval of the DRC before their installation on the property. The point is denied.

Next, the Hausmans assert that the DRC's disapproval of two arrays was based entirely on its application of the Solar Guidelines governing the permissible location of arrays and that the evidence shows that the two arrays comply with the Solar Guidelines if applied according to the City's general zoning ordinances. Paragraph 4c of the Solar Guidelines provides that solar panels are permissible "within a fenced yard or patio to the rear of the main structure." The evidence reveals that the Hausmans own an irregularly shaped corner lot. Their house sits at an angle on the lot facing northeast and a three-car garage is attached to the house at the southwest corner. The two disapproved arrays are installed on the roof and ground-mounted on the south side of the garage. Article XX of the Declarations states, "The Association shall at all times observe the State, County and other laws, and if at any time any of the provisions of this Declaration shall be found to be in conflict therewith, then such parts of this Declaration as are in conflict with such laws shall become null and void." The Hausmans contend that the City's general zoning ordinances, which govern accessory uses and structures and define "main building" and "rear yard," should have been used to determine whether the two arrays on the side of the garage were located to the rear of the main structure.[1] The Hausmans further argue that the trial court erred in excluding additional evidence in the form of testimony and affidavit from

---

[1] The City's zoning ordinances that specifically address the installation of solar energy systems are addressed later in this opinion.

the City Planner and certified copies of city ordinances, which they say prove that the two disapproved arrays are located in the "rear yard" in compliance with the Solar Guidelines.

The issue regarding whether the solar arrays near the garage are in the rear yard or side yard need not be addressed, however, because contrary to the Hausmans' argument, the DRC did not base its disapproval of the two arrays solely on noncompliance with the Solar Guidelines. Likewise, for the same reason, the trial court did not err in excluding additional evidence offered as part of the motion for new trial on the issue of rear yard/side yard issue. As noted above, the Association's Declarations were adopted for the purposes of enhancing and protecting the value, desirability, and attractiveness of the subdivision. Such restrictive covenants are valid. *Virdon*, 711 S.W.2d at 207; *Lake St. Louis Cmty. Ass'n*, 503 S.W.2d at 449. Article XI, Section 8 of the Declarations grants the DRC the right to disapprove any plans and specifications submitted for any reason including, but not limited to, failure to comply with the Declarations or the design standards for the subdivision, incompatibility with the surrounding properties, a determination that the proposed construction would lower the value of or otherwise damage other properties in the subdivision, or a determination that the proposed construction would be inharmonious with the design standards for the subdivision. The DRC's rejection of a structure that is not consistent and harmonious with the overall plan or actual construction within the subdivision or is in conflict with the neighboring properties is a reasonable exercise of the restrictive powers in the Declarations. *Bennett*, 748 S.W.2d at 780; *LeBlanc*, 483 S.W.2d at 650.

The parties' stipulated facts reveal that the DRC's decision was based not only on noncompliance with the Solar Guidelines but also on consideration of other factors such as the character of the subdivision, individual homeowner complaints and lack of complaints, aesthetics, compatibility with surrounding properties, and the impact on the value of surrounding

11

properties. While the trial court noted the rear yard/side yard dispute in its judgment, it found that the DRC's definition of rear yard was tied to aesthetics and uniformly applied. The trial court further specifically found that the DRC's decision disapproving part of the structure "was reasonable and consistent with its role to preserve the beauty and utility of a pleasant residential environment, to enhance the value of the property within the subdivision, and to maintain the harmonious nature of the structures in the subdivision." The Hausmans argue that the findings are not supported by any evidence. They cite evidence showing that the sale price for homes in the subdivision increased from 2011 to 2014 in arguing that their arrays had not negatively affected property values in the subdivision. Their argument, however, ignores the standard of review. They cite evidence contrary to the judgment and fail to recognize the evidence favorable to it.

The evidence in the light most favorable to the judgment shows that the DRC considered aesthetics, compatibility with surrounding property, and impact on property values in rejecting the Hausmans' two solar arrays near the garage. A variety of witnesses testified during each hearing to such matters. Dr. James Murphy, chairman of the Association's DRC, testified that one of the purposes for the DRC is to uphold the general overall appearance of the subdivision. He stated that most of the members of the DRC felt that the Hausmans' solar energy system was not aesthetically pleasing. He further testified that the Association had received complaints from neighbors about the glare from the panels and that he was concerned the panels could potentially lower the property values of adjacent homeowners.

John McCarthy, the Association's board president, testified that he spoke to approximately twenty people who expressed negative views regarding the appearance of the Hausmans' solar system and that various homeowners expressed concern that the installation

12

lowered the value of surrounding properties. He further testified that the DRC reported to the Association's board that it objected to the exterior design of the Hausmans' system and that in the DRC's opinion, the solar panels as constructed were incompatible with surrounding properties, inharmonious with design standards of the subdivision, and lowered the value of surrounding properties.

Joe Hershewe, the Hausmans' former next-door neighbor whose house was listed for sale at the time the Hausmans installed their solar system, testified that he believed that the solar panels negatively impacted the value of his home. He explained that glare from the Hausmans' solar arrays on the south side of their garage focused on his property four to five hours a day. He further testified that he made significant concessions of approximately $20,000 in the sale price of his home due to the negative impact of the Hausmans' system. Barb Rich represented Mr. Hershewe in marketing his house. She testified that the solar panels on the Hausmans' property negatively impacted her ability to market the house, 90% of potential buyers negatively commented on the solar panels, and in her opinion, the solar panels diminished the value of the Hershewe's house.

Finally, John Wood, who owns the home across the street from the Hausmans, testified that glare from the panels on the side of the Hausmans' garage begins at 5:00 p.m. and continues until 7:00 to 8:00 p.m. Mr. Wood testified that he believes the glare, which shines directly into the front window of his house, detrimentally affects his property and he is concerned that it affects the value of the property. Substantial and competent evidence supports the trial court's finding that the DRC's decision was reasonable to preserve the beauty and harmony of the subdivision and to enhance the value of the property within it.

13

Next, the Hausmans argue that the DRC's decision was arbitrary and capricious because it treated similarly situated homeowners differently when it disapproved part of their system but approved another homeowner's system. At the last hearing in this case, the Hausmans presented evidence that the DRC approved the solar array system of another homeowner in the subdivision, Jerry Daniels. They argue that the evidence shows that like Mr. Daniel's solar arrays, both of their solar arrays disapproved by the DRC, in fact, complied with the Solar Guidelines.

Section 6.13 of the Restatement of Property: Servitudes provides that a common-interest community such as a homeowners association has certain duties to members of the community including a duty 'to treat members fairly" and "to act reasonably in the exercise of its discretionary powers including rulemaking, enforcement, and design-control powers." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 6.13(1)(b) & (c)(AM. LAW INST. 1998). "Unequal treatment of members who are similarly situated will usually be an easy case of unfairness…." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 6.13 cmt. d.

Evidence in light most favorable to the judgment shows, however, that the Hausmans and Mr. Daniels are not similarly situated. The Hausmans own a corner lot while Mr. Daniels owns a lot at the end of a cul-de-sac. Mr. Daniel's arrays are erected on the ground against the back property line. They lie low to the ground compared to the Hausmans' ground mounted array that is situated up the side of the garage to the roof. Furthermore, Mr. Daniel's arrays lie on a level ten to fifteen feet below that of the house and can't be seen from the street in front of the house. And they can't be seen from any other property in the subdivision except from that of Mr. Daniel's next-door neighbor, who has no complaints with the array. The Hausmans' arrays, on the other hand, are visible to at least two neighbors, who reported significant glare onto their property when the arrays were erected. Finally, unlike with the Hausmans' arrays, no evidence

14

was presented that Mr. Daniels solar array system was incompatible with surrounding property or inharmonious with the character of the subdivision.

The trial court's judgment that the DRC's disapproval of part of the Hausmans' solar energy system was reasonable and was not arbitrary and capricious is supported by substantial and competent evidence and is not against the weight of the evidence. Points I, II, and IV are denied.

In the final two points addressed, the Hausmans argue that the trial court's judgment in favor of the Association erroneously declared and applied the law because the City's ordinances on solar energy systems apply in this case. The St. Joseph City Council enacted an amendment to its zoning ordinances on July 8, 2013, that addressed the issue of installation of solar energy systems within the city limits. Section 31-366(a) of such ordinance provides that no homeowners' agreement can restrict or limit a solar energy system to a greater extent than the City's solar ordinances. The Hausmans argue, and the Association agrees, that the Association's Solar Guidelines adopted in September 2012 restrict the installation of solar energy systems in the subdivision to a greater degree than that provided in the City's ordinances. The Hausmans contend that because the City issued building and electrical permits for their solar arrays, their solar arrays clearly comply with the City requirements. They assert that section 31-366(a) applies to their system because it was in full force and effect when the Association filed its amended petition two months after the enactment of section 31-366(a) and one month after the City issued the permits for their system. They contend that the Association abandoned its previous claims when it filed its amended petition because it did not incorporate or reference the previous petition and that the Association's action thereby became subject to the provisions of the City's ordinances. The Hausmans further argue that retrospective application of section 31-

15

366(a) is not unconstitutional. Finally, they claim that the Association failed to exhaust its administrative remedies by failing to seek a variance from the provisions of the City's solar ordinances from the City's Board of Zoning.

Contrary to the Hausmans' argument, the filing dates of the Association's petitions and whether claims under the original petition were abandoned are irrelevant to whether the City's ordinances on solar energy apply to the Hausman's solar array system. Generally, a zoning ordinance is operative from its effective date and is not applied retroactively unless such intent is expressly stated or the language of the ordinance admits of no other construction. *Fleming v. Moore Bros. Realty Co.*, 251 S.W.2d 8, 16 (Mo. 1952). The prospective application of the City's solar ordinances is reflected in Special Ordinance No. 2698, which enacted the City's solar ordinances. Section 3 of the special ordinance expressly stated, "That this ordinance shall be in full force and effect from the date of passage." Special Ordinance No. 2698 was passed on July 8, 2013, and the solar ordinances, including section 31-366(a), were, therefore, enacted and in full force and effect that day. Nothing in the language of the City's solar ordinances shows an intent that they operate retroactively. In fact, the City took the position at trial that its solar ordinances applied prospectively only and did not apply to the Hausmans' system, which was installed and inspected by the City a year prior to the enactment of the ordinances. The trial court did not err in finding that the City's solar ordinances are not applied retroactively to the Hausmans' solar energy system. And because the trial court properly found that section 31-366(a) operates prospectively and does not apply to the Hausmans' solar energy system, it is unnecessary to determine whether its retrospective application would be unconstitutional. Finally, because the Hausmans' argument that the Association failed to exhaust its administrative

16

remedies is premised on the assertion that section 31-366(a) is enforceable in this case, that argument also fails. Points III and V are denied.

## Attorney Fees on Appeal

The Association filed a motion for attorney fees on appeal in the amount of $18,175, and the motion was taken with the case. Under this court's Special Rule XXIX, "a party may file a motion in this court for attorney fees 'pursuant to contract, statute, or otherwise.'" *Motor Control Specialties, Inc. v. Labor and Indus. Relations Comm'n*, 323 S.W.3d 843, 857 (Mo. App. W.D. 2010). An appellate court may award attorney fees on appeal "if they are based on a written agreement that is the subject of the issues presented on appeal." *Jamestowne Homeowners Ass'n Trustees v. Jackson*, 417 S.W.3d 348, 359-60 (Mo. App. E.D. 2013)(internal quotes and citation omitted). Article XI, section 11 of the Declarations provides that the Association "shall have the right to enforce its rights of action as provided in this declaration together with all remedies whether at law or in equity and including but not limited to the remedy of injunctive relief and obtaining a monetary judgment for all costs, expenses, including attorney's fees, and damages." The Association, therefore, is entitled to reasonable attorneys fees relating to its action to enjoin a violation of the restrictive covenants.

Although this court has the authority to allow and fix the amount of attorney fees on appeal, the power is exercised with caution. *Id.* at 360. In most cases, the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fees requested. *Id.* Thus, on remand, the trial court shall determine the amount of attorney fees and enter judgment accordingly.

The judgment of the trial court is affirmed. The Association's motion for attorney fees on appeal is sustained, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
VICTOR C. HOWARD, JUDGE

All concur.